1. ATTORNEY AND CLIENT—DISBARMENT—SUBORNATION OF PERJURY—SUFFICIENCY OF EVIDENCE.

An attorney employed to prosecute a suit against a street railway for a street accident employed one P. to find witnesses. Two girls, 15 and 17 years old, testified that the attorney came to them in company with P., and induced them to swear for plaintiff, though they stated to him that they knew nothing of the case. Their testimony was corroborated by P. and the mother of one girl; and another witness testified that the attorney attempted to get him to swear to having seen the accident, although he told him that he had not seen it. *Held* sufficient evidence of subornation of perjury to authorize the disbarment of the attorney.

2. SAME.

Where a disbarment proceeding is based upon subornation of perjury, by which a judgment is obtained, testimony of the witnesses alleged to have been suborned, taken before a former referee in an action to set

aside the judgment so procured, is admissible in the disbarment proceeding after a large part of such evidence is offered upon the cross-examination.

Application of the Metropolitan Street-Railway Company for the disbarment of Benjamin Oppenheim as an attorney at law. Motion to confirm report of referee. Granted.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Henry Melville, for the motion.

Clifford Wayne Hartridge, opposed.

INGRAHAM, J. A very thorough examination of the testimony before the referee has led me to the conclusion that the charges are fully sustained. No one can read this testimony with the explanation given by the person against whom the charges are made without being convinced that the testimony of the two witnesses McDonnell and Langstaff, given on the trial of the action, was false; that the respondent knew that it was false; that he induced these two witnesses to testify falsely; and that he endeavored to persuade other people, who had not seen the accident, to testify in favor of the claim against the railroad company. This respondent and his partner appeared as attorneys in the action of Nugent against the Metropolitan Street-Railway Company, the action in which the evidence was given, and made an agreement by which they were to receive one-half of the recovery as compensation for their services, and thus became jointly interested with the plaintiff in the result of the action. The injury to recover for which that action was brought was caused by one of the street cars of the Metropolitan Railroad running over a child in the street. The respondent heard of the accident from a person with whom he was taking lunch at a restaurant, and immediately proceeded to call on the child's mother for the purpose of being employed as attorney, and obtained a contract by which he was to receive one-half of any recovery. He then proceeded to manufacture the testimony to obtain a recovery. So far as appears, this respondent was the principal actor in starting the action and in prosecuting it to a successful termination. He employed an Italian barber, named Peorchia, to find persons who would testify upon the trial. With Peorchia he went to see those suggested as witnesses; took affidavits from several persons, which I am satisfied were known by him to be false when verified, if they were verified; called upon others, and endeavored to induce them to testify; produced upon the trial these witnesses who had been induced to testify falsely; and upon such testimony obtained a verdict. The two witnesses who testified to what they now say was untrue were girls, one 15, and the other 17, years of age. They testified before the referee in these proceedings that neither of them had seen the accident, and that they so informed the respondent when he called upon them. Their testimony is corroborated by Peorchia. To induce these two witnesses to so testify, the respondent appealed to their sympathies, asked them to assist the child and her mother, who were poor people, as against this rich railroad company; and,

having induced them to consent, promptly drew up affidavits, which he procured to be signed before a commissioner of deeds, and subsequently drilled these two young girls as to the testimony that they should give. To this these girls testified before the referee, and their testimony is corroborated by Peorchia. The mother of one of the girls also appeared as a witness, and corroborated the story of her daughter. And that this respondent endeavored to persuade others to testify in relation to the accident, although as a fact they never saw it, is corroborated by the evidence of a person named Strom. Strom testified that the respondent asked him whether he had seen the accident, to which Strom replied: "No, sir. I was out on the sidewalk at the time, doing some work, but I had my back turned towards the accident. He [respondent] says, "Could not you just as well say that you seen it?' I told him 'No.' I would not have anything to do with him after he said that. So he says something about the company being rich, and gave me a history about we were Yohoodum, which means Jews,—both Jews." This is corroborated by Peorchia, who was present at the interview. It is impossible in detail to go over this testimony. It is enough to say that we are fully satisfied with the conclusion to which the referee arrived.

The learned counsel for the respondent insists most strenuously in his argument before us that, as the public press have detailed many attempts of the agents of this railroad company to commit similar crimes to that alleged against the respondent, this in some way should palliate the respondent's offense. We are not engaged in this proceeding in protecting the rights of the Metropolitan Railway Company. This respondent, an officer of the court, who has accepted the responsibility and obligations of an attorney of this court, is before us charged with a most serious offense, not only against the rules and ethics of his profession, but against the criminal law of the state, for his own pecuniary advantage. We realize perfectly the rule—and should be disposed to enforce it in this case—that this respondent should not be convicted of these charges solely upon the uncorroborated evidence of the two witnesses who now testify that at his procurement they swore falsely upon the trial of the action of Nugent against the Metropolitan Railway Company, but we think the testimony of these witnesses was amply corroborated by sufficient and credible evidence. It is true that Peorchia was to some extent an accomplice of the respondent in procuring this false testimony. He was, however, an Italian, without much education, and he took but little part in inducing the witnesses to testify falsely. His guilt is certainly not equal to that of the respondent, who was given, by virtue of his position as an attorney at law, authority in dealing with people of this character, and it was by virtue of the authority that he acquired because of his professional position that, according to the testimony of these girls and the mother of one of them, they were induced to accede to his request. But the extent of corroboration required in a proceeding of this kind is not that every act of the person charged should be corroborated by independent testimony, but that there should be independent testimony which tends to corroborate the truth

of the charge; and there is such independent testimony in this case. Strom expressly testifies that the respondent endeavored to induce him to swear to what was not true, and to swear that he saw things which he did not see. If there could be no convictions in cases of this kind unless the person who was induced to swear falsely received direct corroboration, a person charged with such a crime would be perfectly safe so long as he could induce his accomplice to communicate only with him when no others were present.

The respondent also relies upon the minor contradictions that appear in the cross-examination of these witnesses and the stories told by them; but when we remember the character of the witnesses, the fact of their inferior mental development, and their inexperience in proceedings of this kind, it is rather surprising that they stood the severe cross-examination to which they were subjected as well as they did. .

There are several rulings upon evidence to which the respondent objects, but we do not find that in any of them there was error. The testimony of McDonnell and Langstaff, taken before a former referee in an action to set aside the judgment in the Nugent case, was admitted by the referee, but only after a large part of this evidence had been again offered upon the cross-examination of these two witnesses upon the proceeding before the referee; and it certainly was not improper for him to allow the evidence that they actually gave to be introduced, so as to have it before him in determining whether that testimony before the former referee was contradicted by the testimony upon the present hearing. Nothing appears to show that the referee used the testimony taken before the former referee, or that it influenced him in any way, in arriving at his conclusion. Assuming that it was entirely incompetent as against the respondent, it has not been before us upon this application, and we have confined our finding entirely to the evidence that was taken before the referee in this proceeding. It is needless further to discuss the evidence in this case. The respondent, a member of the bar, has grossly abused his position; has been guilty of an offense which, by the law of this state, is a felony; and should be no longer permitted to disgrace the profession. The application should, therefore, be granted, and the respondent disbarred. All concur.

VAN BRUNT, P. J. I concur. The evidence shows that the respondent is absolutely unworthy of credit, and is in no respect to be believed under oath. When he desired to be admitted to the bar he swore falsely that he was a resident of Brooklyn, and when he desired to bring an action in Queens county he swore that he was a resident of that county, whereas during all that time he resided in New York. These facts, admitted by him, are alone sufficient to justify his disbarment.