# TENNESSEE BAR ASSOCIATION v. HARRY BERKE.—344 S. W. (2d) 567.

Middle Section, at Nashville. October 28, 1960.

Tyree B. Harris, Paul F. Bumpus, Nashville, for Tennessee Bar Association.

Harry J. Schaeffer, Gus A. Wood, Jr., Chattanooga, for Harry Berke.

HUMPHREYS, J. This cause is before this Court on appeal from a decree of the Chancery Court of Hamilton County, entered by Special Chancellor John D. Holladay, sitting by interchange for Chancellor M. B. Finkelstein, dismissing the petition of the Tennessee Bar Association for an order disciplining or disbarring Harry Berke, an attorney at law practicing at Chattanooga.

This suit received the fullest consideration by the Special Chancellor, an able jurist with a record for defending the integrity of the Court and the Bar in proceedings of this character (see State ex rel. v. Robert Polk, No. 9704, Court of Appeals, Middle Division) and we can do no better than adopt his opinion in this cause as set forth in the decree as ours. This opinion with one deletion is as follows:

"This cause originated in this Court on September 29, 1959, by petition of the complainant, Tennessee Bar Association, as authorized by Section 29-309 of the Tennessee Code Annotated in the nature of an original bill,

seeking to have this Court strike the name of the defendant, Harry Berke, from the roll of attorneys, solicitors and counsellors, and to exclude him from practicing the profession of law in all the Courts of this State.

"Complainant predicates its cause wholly upon two decrees rendered against the defendant, (1) the opinion of the Chancery Court of Knox County, Tennessee, wherein the defendant was found guilty of gross negligence in exchanging Nine Thousand Nine Hundred and No/100 ($9,900.00) Dollars of new money for old, the new money having been stolen from Dobyns-Taylor Hardware Company, located at Kingsport, Tennessee, and (2) the opinion of the Court of Appeals of Tennessee, Eastern Division, rendered on November 28, 1958, wherein that Court affirmed the judgment of the Chancellor in the Knox County Chancery cause, but further held that the defendant, Harry Berke, had been paid a substantial fee as a remuneration for his part in a conspiracy to conceal the identity of the money, which opinion and judgment of the Court of Appeals became incontestable on or about the 8th day of April, 1959, when the Supreme Court of Tennessee denied the writ of certiorari.

"Complainant's bill alleges a violation of Section 29-308 of the Tennessee Code Annotated in that (1) the defendant, Harry Berke, committed an infamous crime or misdemeanor involving moral turpitude; and, (2) has been guilty of unprofessional conduct, dishonesty, malpractice, and other conduct which renders him unfit to be a member of the Bar.

"The opinion of the Court of Appeals is binding upon the defendant, and he will not be permitted to go behind the findings therein contained, because the matters are

res judicata and constitute an estoppel to the issues framed within that cause. However, it would have been inconscionable for the Court on hearing the proof in this cause on February 4, 1960, not to have permitted the witness, William M. Hughes to testify that he was in error, when, as a witness in the former cause, he said, in effect, that Harry Berke had made another and contradictory statement before the Hamilton County Bar Association Grievance Committee, or its Board of Directors, regarding his connection with the money exchange. How deeply this weighed with the Court of Appeals, there is no way for this Court to know, but it is significant that in the opinion in the Dobyns case primary attention was given to the testimony of the witness, William M. Hughes, at that time secretary of the Board of Governors of the Hamilton County Bar Association, and an experienced lawyer, who testified that he was present, heard the statement of Berke relative to the matter under investigation (i.e. the exchanging of new money for old) and that Berke denied anything about being present at the Bank, or having anything whatsoever to do with the transaction. Mr. Hughes was asked and answered as follows:

" 'D66. Did Mr. Berke ever come before the Bar Association or the Grievance Committee or anybody you had, who was considering what would be done about the action of these two gentlemen, these two lawyers, in obtaining that exchange? A. Well, yes. After Mr. McEwan made this statement before the Board of Governors, we invited—we advised Harry and invited him to come before the Bar, before the Board, and he did a day or two later, and he did make a statement which was, in effect, a complete denial of any implication with it at all.

" 'D67. Did he deny making this exchange, going down there and requesting the bank to make this exchange? A. That's right.

" 'D68. Exchange of old money for new money? A. That's my recollection, that Harry made a complete denial of it.

" 'D69. Did he deny going down to the Bank? A. Yes, sir.

" 'D70. In company with McEwan? A. That's my recollection.'

"In the light of the surrounding circumstances, the testimony of Berke, as revealed in this record, the part he admitted having in connection with this transaction, puts him almost in the same position as we find McEwan relative to contradiction.

"Mr. William M. Hughes being a man of integrity and conscious of having given erroneous testimony, came before this Court and testified that he was mistaken on the former occasion when he testified as outlined above.

"It is possible that the Court of Appeals would have found nothing inconsistent in the conduct of the defendant, Harry Berke, had the uncontradicted proof been that he had related the same version of his association in the matter from the beginning to end. There is proof in this record that was not before the Court of Appeals with reference to the contradictory nature of the testimony of Robert C. McEwan, which renders his testimony valueless and unworthy of belief. The witness, Fred Hixson, a member of the Hamilton County Bar Association, and a reporter on a local newspaper, testified under oath that a few days before he was found dead in a parking

lot in Chattanooga, Robert C. McEwan told him that he, the said Robert C. McEwan, was in such a position that it looked as if he would have to take the 'easy way' out, that the Bar Association was after him, that he was involved in domestic difficulties, and that he had made a false and most damaging statement regarding a fellow lawyer, namely Harry Berke. Further that while he had told many conflicting stories that actually the defendant, Harry Berke, never received one penny of the money in question as a fee or otherwise, and that he could not face him. The witness Hixson, further testified that McEwan had made a similar statement to him on other prior occasions.

"The defendant, Harry Berke, produced character witnesses from among the Judiciary and a large segment of the Bar, as well as other responsible people, who testified as to his good character. In addition he produced cancelled checks showing the payment of over $10,000.00 of his money in satisfaction of the judgment in the Knox County Chancery cause.

"This Court assumes that the Tennessee Bar Association through its proper representatives made a thorough investigation of the conduct and practices of the defendant, Harry Berke during his long experience as a member of the Bar, yet no charge was leveled against him, except the one instance or transaction that has harassed him for almost a decade, and has cost him a great deal of money, as well as social and professional embarrassment, so that the Court feels that he has more than paid for any error of judgment, or negligence that may have resulted in a civil judgment being rendered against him.

"The complainant is quite right in indicating in its original bill, Section 8 page 6 that the Supreme Court on its own motion could have stricken the name of the defendant from the roll of attorneys, solicitors, and counsellors while considering the petition for certiorari—provided that appeared proper under the circumstances. Had the Supreme Court believed the defendant to have been guilty of fraudulent conspiracy, an unlawful practice, or conduct rendering the defendant unfit to practice law that would have been done, because that tribunal, would not permit to pass unnoticed an incident involving moral turpitude or conduct rendering a licensed attorney unfit to practice in the Courts of Tennessee.

"This Court has carefully read every word of the record, including all records of the former trial, the exhibits herein, all of the briefs filed, and considering the whole proof it is the duty of the Court to render justice upon the facts, as shown in this cause.

"This Court is of the opinion and so orders, adjudges, and decrees that the bill has not been sustained and it is dismissed at the cost of the complainant.

"This March 22, 1960, at Chambers in Cookeville, Tennessee."

 The record sustains the Special Chancellor's decree and it is affirmed. However, there are two legal propositions in connection with this appeal which we should like to discuss briefly. The first is, that it is not the rule that an opinion of a chancellor, or of this Court, or a decree thereon, any more than a judgment of the Circuit Court in a civil matter as distinguished from one criminal in nature, in a suit not brought to disbar an attorney, has

the effect of estopping a lawyer in a subsequent disbarment proceeding so as to prevent the introduction of any proof therein contrary to the opinion and decree. The rule is that records,—that is pleadings and proof in cases in which an attorney appeared either as an attorney or as a party—can be offered in evidence to the extent they are relevant to the issue of fitness to practice, but that such records and judgments are not res judicata and do not necessarily work an estoppel in a subsequent disbarment suit.

The law on this subject is best discussed in the case of In re Santosuosso, 318 Mass. 489, 62 N. E. (2d) 105, 107, 161 A. L. R. 892. In that case which was an inquiry into certain alleged misconduct of Santosuosso, an attorney, upon a petition of the Bar Association of the City of Boston, the petitioner offered in evidence the entire printed record in the files of the clerk of the Supreme Judicial Court for the Commonwealth of Massachusetts in a civil case in equity in which Santosuosso had been a defendant, and the findings and order in the case. Santosuosso objected that the evidence was not admissible under the doctrine of res adjudicata and also that apart from the doctrine of res adjudicata, the statements made by a judge in his findings and decree were not admissible as evidence. In holding that the paramount considerations supporting proceedings to investigate the worthiness of members of the bar to practice law could not be defeated by the application of strict rules of evidence governing the trial of adversary proceedings between parties, and that the necessity for the preservation of the integrity of the courts and the safety of the public rises above strictly technical rules of evidence that govern such adversary proceedings between parties, the court said:

"We are of opinion that the evidence contained in the record offered by counsel designated by the court to conduct the proceeding, that is, the evidence adduced at the hearing in the Superior Court of the equity suit in question, at which the respondent, a party thereto, was present and represented by counsel, testified and had full opportunity to present and examine witnesses and to cross-examine those called by the plaintiff, is admissible in the present inquiry. See State ex rel. Nebraska State Bar Ass'n v. Gudmundsen, [145] Neb. [324], 16 N. W. (2d) 474. We reach this conclusion without dependence upon such cases as Selling v. Radford, 243 U. S. 46, 37 S. Ct. 377, 61 L.Ed. 585, Ann. Cas. 1917D, 569, and Matter of Ulmer, 268 Mass. 373, 167 N. E. 749, in each of which a judgment of disbarment in another jurisdiction was held to settle the issue that the attorney in question was unfit to practice. We are unwilling to attach such conclusive effect to a judgment at law or a final decree in equity, based upon alleged corrupt conduct on the part of a defendant attorney, where the judgment or final decree entered rests upon findings that the attorney has been guilty of corrupt conduct. * * * * * * we are of opinion that the evidence in the proceeding in equity in question is admissible in an inquiry such as the present, and like any other evidence is to be given such weight as the single justice shall deem proper, when considered together with all other evidence that the respondent may produce at the hearing, in the course of which he must be heard with full opportunity to present all relevant evidence that he may wish to adduce.

"The foregoing view finds support in such cases as In re Lacy, 234 Mo. App. 71, 112 S. W. (2d) 594; In re Pate, 232 Mo. App. 478, 119 S. W. (2d) 11; State ex rel. Nebraska State Bar Ass'n v. Gudmundsen, 145 Neb. 324, 16 N. W. (2d) 474; Werner v. State Bar, 24 Cal. (2d) 611, 150 P. (2d) 892, and Fairfield County Bar v. Taylor, 60 Conn. 11, 22 A. 441, 13 L. R. A. 767. See also Matter of Becker, 229 App. Div. 62, 65-66, 241 N. Y. S. 369; Id., 255 N. Y. [223] 233, 174 N. E. 461; Wigmore on Evidence, 3d ed. sec. 4(7). In the Gudmundsen Case the court, after stating that there had been some doubt as to the admission of evidence such as that offered in the present proceeding, said: 'It is thought, however, that this question should no longer remain in doubt. It is therefore the holding of this court that the finding in a civil action that an attorney at law has been guilty of conduct justifying disbarment is not conclusive on the same question when presented for determination in an action for disbarment; that notwithstanding the finding in the civil action the culpability of the attorney must be established in the disbarment action by a clear preponderance of the evidence. For this purpose the evidence taken at the trial of the civil action and all other competent evidence is admissible' (page 476 of 16 N. W. 2d)."

Other cases holding, in general, to this same effect are: In re Berkeley, 174 App. Div. 205, 160 N. Y. S. 1093; In re Bailey, 31 Ariz. 407, 254 P. 481; Fairfield County Bar v. Taylor, 60 Conn. 11, 22 A. 441; In re Durant, 80 Conn. 140, 67 A. 497; State ex rel. Nebraska State Bar Association v. Gudmundsen, 145 Neb. 324, 16 N. W. (2d) 474; Metropolitan Street R. Co. v. Oppenheim, 58 App. Div. 510, 69 N. Y. S. 524.

State v. Bomer, 179 Tenn. 67, 162 S. W. (2d) 515, supports this view. This was a proceeding against Bomer for his disbarment on the ground he had instituted prior disbarment proceedings in Chancery Court against two attorneys for no just reason and without any probable cause, being actuated by motives of personal hatred and ill will, and had thus abused the court's process as a means of carrying out his desire for personal vengeance. Upon Bomer's objection to the introduction of the decrees of the Chancery Court in the suits which he had filed against the two attorneys (which decrees recited the suits were without merit), our Supreme Court said that such decrees could be received in evidence, *not as conclusive proof of the charges against Bomer, but only as evidence in the case, to show the result of the prior trials,* and in that case the recitation in the decrees that the suits were without merit, was not taken as foreclosing that issue to Bomer and other proof in regard thereto was offered by him and heard.

■■ The second proposition upon which we should like to comment is with respect to the application of the doctrine of laches to this case. The doctrine of laches may be applicable in a disbarment proceeding and the Special Chancellor could very well have predicated his opinion and decree in good part thereon. The incident out of which this disbarment proceeding arose occurred in 1950. It was fully investigated by the Chattanooga Bar Association in that year with the result that that Association recommended that no disciplinary action be taken against Berke. The petitioner had immediate notice of the incident and caused investigation to be made of it. However, no court action was taken against Berke until the commencement of these proceedings in 1959, nine years after

the incident. We think such long delay, unexplained as it is in this record, coupled with proof that witnesses have died or otherwise have become unavailable, constitutes laches (Gibson's Suits in Chancery, 5th Ed. sec. 81) and was a ground for dismissal of the petition. In 7 C. J. S. Attorney and Client, sec. 25b, it is stated "Staleness in a charge against an attorney may prevent its being considered, because an unreasonable delay in the presentation of a charge of misconduct may make it impossible for an attorney to procure the witnesses or the testimony which would have been available at an earlier time to meet such charge." That is the condition here. The gravity of the charges demanded that they be examined fully at the first opportunity. That this was not done does not appear to have been the fault of Berke, who offered to appear before the petitioner and submit to an investigation. Nor, does it appear the delay has been to his benefit but rather, strongly, to his detriment. Moreover, it appears that in the nine year period Berke has not transgressed against the ethics or the morals of the legal profession, but to the contrary sustains a good reputation as a lawyer. In such case, the doctrine of laches was applicable.

Hickerson and Shriver, JJ., concurring.