RAULSTON SCHOOLFIELD

*v.*

The TENNESSEE BAR ASSOCIATION and
THE CHATTANOOGA BAR ASSOCIATION.

353 S. W. 2d 401.

(*Knoxville,* September Term, 1961.)

Opinion filed December 8, 1961.

Rehearing Denied February 8, 1962.

Ray L. Brock, Jr., John B. Taylor, Chattanooga, for petitioner.

John Clarence Evans, Charles H. Warfield, William H. Woods, Nashville, Paul Campbell, Chattanooga, for respondents.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

This is a disbarment proceedings against the petitioner, Raulston Schoolfield, resulting from a bill filed by the Tennessee Bar Association and the Chattanooga Bar Association. In this opinion these associations will be referred to as complainants and Raulston Schoofield as defendant, this being their designation in the trial court.

There was a hearing before the Honorable Knox Bigham sitting by designation, and in this hearing the defendant was permanently disbarred from the practice of law in this State, and a decree so ordering was entered.

In due course an appeal was taken to the Court of Appeals and was heard by the Western Division of that Court and the decree of the Chancellor was affirmed, Judge Carney dissenting.

We have heretofore granted certiorari, and the cause has been argued orally at the Bar of this Court.

It should be observed here that both the trial court and the Court of Appeals have decreed that the defendant be permanently disbarred from the practice of law in the Courts of this State.

In the trial court the complainants relied upon the record of the impeachment proceedings in the State Senate

of Tennessee, wherein the defendant, Schoolfield, then the Criminal Court Judge of Hamilton County, was impeached (1) accepting as a gift a new Pontiac automobile, (2) engaging in active politics and (3) using profane and obscene language while acting as judge.

■ It should be observed that the defendant was licensed to practice law by this Court by virtue of our statutes regulating the applicants for admission to the Bar. The granting of a law license is a privilege and may be revoked at any time by this Court for good and satisfactory reasons, one of which is that the holder of this license has been guilty of such conduct as renders him unfit to further pursue the practice of law.

■ This privilege having been granted by this Court, we can take judicial knowledge of the impeachment proceedings heretofore referred to, and use the findings in said trial to determine whether or not the defendant is guilty and should be disbarred.

It is not what the defendant says he was convicted of, but what the convictions were actually for, that brought about this disbarment proceeding.

What the defendant was actually convicted of by Article 8 was accepting a gift of a Pontiac automobile, the money to purchase same having been solicited and collected by Jim Earl West, the defendant's court officer, from known law violators, who had cases then pending, or thereafter pending in the Criminal Court presided over by the defendant. Also, lawyers, who practiced in said court, were solicited by the defendant's court officer, and made contributions to the purchase money of this automobile.

Conviction of this Article 8 also was for accepting this automobile the defendant in return for favors extended, and to be extended by him to some of the donors through his official capacity as Criminal Judge of Hamilton County.

Likewise, the defendant was found guilty of Article of Impeachment No. 19 which charged, not just that he, "engaged in active politics," but that he used the power of his judicial office to promote the candidacy of political friends and engaged in such conduct openly and notoriously, and that he used the power of his office to either persuade or dissuade persons participating in political activity to become or refrain from becoming candidates for public office. That he commanded and directed political actions of persons, who were known law violators and racketeers, many of whom had criminal cases pending and awaiting trial in the court presided over by the defendant, and that he met and associated with known law violators, gamblers and racketeers at shady and questionable places while a judge of the Criminal Court in order to coerce, command, and direct these characters to do his political will, and that by all of such activities his office was brought into public contempt.

The defendant was found guilty of Article of Impeachment No. 22, in that he used profane and obscene language, both privately and in public, which conduct was widely known in Hamilton County to such an extent as to bring his high office into public contempt, disgrace and disrespect.

The defendant contended that his acts as a judge should not disqualify him as a member of the Bar. He contends there is a conflict between the holdings of the

Court of Appeals in this case and holdings in two other recent cases.

There is no conflict with the decision in *Bar Association v. Freeman* (Court of Appeals, Middle Section, June, 1961) because there Freeman was not even a party to the divorce action which was one of the grounds of the disbarment petition.

The case of *Bar Association v. Berke,* 48 Tenn. App. 140, 344 S.W.2d 567, is not in conflict with the case here, or the Freeman case, because that disbarment proceeding was predicated on a judgment of a court in a civil case for money damages, and the opinion of the trial court, and the Court of Appeals in that case clearly indicated that the basis of the dismissal of the case was due to the fact that the defendant had been punished enough.

It also appears that the petition in this cause for disbarment the defendant had on two occasions been before the Supreme Court for disciplinary actions in matters which he was found guilty.

In the first of these incidents, defendant impersonated another and took the Bar examination for some other person.

The second incident related to the refusal of the defendant to represent two defendants jointly indicted for burglary for which he was fined for contempt of court, which action this Court sustained.

. We are of the opinion that the Chancellor was correct in striking certain statements and defenses of defendant's answers which sought to show that the judgment and findings of the impeachment court were void.

Our reasons for so sustaining the action of the Chancellor are because:

(1) the impeachment tribunal acted within its jurisdiction;

(2) the question of reapportionment is not a judicial question;

(3) officials may be impeached for crimes not so defined by the statutes or common law,

(4) the Senate exercised judicial power, and its judgment is entitled to full faith; and as it acted within its jurisdiction, its procedures are not to be questioned by another court.

*In Re Stolen,* 193 Wis. 602, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355, the Court said:

"One of the requisite qualifications for one who holds the office of an attorney at law is that he or she shall be of good moral character, in so far as it relates to the discharge of the duties and responsibilities of an attorney at law. This is a continuing qualification. It is a qualification necessary to entitle one to admission to the bar, and the loss of such qualification requires his suspension. The respondent is a member of the bar of this court. The charges preferred against him challenge his moral integrity. Just as it was the duty of this court to refuse him admission in the first instance upon a showing that he lacked the necessary moral qualifications, so is it its duty now to remove him upon like proof. * * * Its present concern is only that the act complained of discloses a lack of moral character constituting a continuing qualification to

entitle him to remain a member of the bar of this court. * * *

"One's morality or lack of morality is revealed by general conduct. One may lack morality in a great many ways. Where this lack of morality has no relation to, and does not affect, his duties and responsibilities as an attorney at law, the delinquencies are generally overlooked by the courts. But where there is lacking honesty, probity, integrity, and fidelity to trusts reposed in him, it matters not whether the lack of such virtues is revealed in transactions with clients, in the conduct of lawsuits, or any other business dealings or relations. These qualities are highly essential on the part of those who are to exercise the privileges and responsibilities of members of the bar. When the lack of them becomes apparent, no matter what the character of the deal or transaction that may furnish the evidence, it becomes the duty of the court to purge its roster of an unreliable member. So if the respondent, by or through his acts as judge of the superior court, betrays a lack of the moral qualifications demanded of attorneys at the bar, it becomes the duty of this court to strike his name from the roll of its attorneys. * * *

"There are many things which he might do with propriety as a practicing attorney which would be highly improper while occupying a judicial position. Unless one has the strength of character to resist temptations to do those things which are prohibited to a judge, then he does not have that moral character which is demanded of an attorney at law. The transactions which we are discussing reveal a lack on the

part of the respondent of that degree of moral character.''

■ It is the duty of an attorney to uphold the honor of the profession of law; to be honest, to be of good conduct in the discharge of his duties to the Court, the public and his clients. Attorneys are trusted by the community with the care of their lives, liberty and property with no other security than personal honor and integrity.

■ The trust and confidence which must necessarily be reposed in an attorney requires him to maintain a high standard of moral character and a due appreciation of his duty to his profession, the courts and the public. He is charged with the duty of good faith and honorable dealing on all occasions.

■ The practice of law is not a trade to be engaged in by all with or without qualification but it is a profession open to those who meet the educational and moral requirements required by law and the rules of the court. It is a privilege limited to one of good moral character as properly attested at the time his license to practice is issued and it is his absolute duty to conduct himself so as to reflect credit upon himself and the profession in order that he may keep and maintain such license, which was granted in the first instance conditioned upon his so doing.

Under Section 29-308 T.C.A. an attorney may be disbarred if he shall be guilty of any professional misconduct which renders him unfit to be a member of the Bar.

■ The Senate, in this cause, could not lawfully have passed upon the fitness of the judge to remain a member of the Bar; its powers as a Court of Impeachment

are specifically limited to removal from office and disqualification. Article V, Constitution of Tennessee, T.C.A. Section 8-2605.

■ A lawyer may be disbarred for misconduct occurring while he is acting as a judge, especially where the involved conduct reflects moral turpitude. *Weston v. Board of Governors,* 177 Okl. 467, 61 P.2d 229; Annotation 53 A.L.R.2d 305.

■ The purpose of disbarment is not primarily to punish, but to protect the court from the administration of persons unfit to preside as attorneys. *Davis v. State,* 92 Tenn. 634, 23 S.W. 59.

■ The power to disbar is inherent and may be exercised independent of statute. *State v. Bomer,* 179 Tenn. 67, 162 S.W.2d 515; *Ingersoll v. Coal Creek Coal Co.,* 117 Tenn. 263, 98 S.W. 178, 9, L.R.A.,N.S., 282.

. It is quite evident from the record that the Senate found that the defendant was not fit to hold the judicial position he occupied. The Senate had no power to pass on the defendant's qualification as a lawyer.

The only question here is whether the defendant's conduct has been inimical to the standards to be expected of a lawyer as an officer of the court. Clearly it has, when, as stated by Judge Carney in his dissent, the defendant has given the judiciary and the legal profession of the whole State a black eye. Such conduct creates doubt in the minds of the public as to the integrity of the courts specifically, and the Bar in general.

The defendant insists that a lawyer cannot be disbarred for misconduct occurring in his official capacity as a judge. We think the weight of authority is to the

contrary. As stated in the Annotation 53 A.L.R.2d 306, citing cases from some fifteen jurisdictions:

"It is generally recognized that an attorney may be disbarred, suspended, or otherwise disciplined for misconduct in the exercise of a judicial office, at least where such misconduct clearly reveals moral delinquency, as where the acts complained of constitute fraud, crime or dishonesty."

Practically every case supporting the minority view involves a situation where the disbarment proceeding, is sustained, would have accomplished the removal of the defendant from judicial office. The present case involves no such situation; this defendant has already been removed from judicial office.

▬▬▬ The basis is that the defendant has, by the impeachment proceeding, been found guilty of reprehensible conduct involving moral turpitude, and has demonstrated qualities which make him an unfit person in whom to place the public trust of practicing law. The seriousness of this conduct is the same, irrespective of whether it occurred while the defendant was in judicial office, or out of judicial office.

It is rather remarkable that one guilty of such conduct should now claim immunity from its consequences because his actions were clothed about by judicial robes. He would make the bench a shield, holding him from the minimum standards required of all ordinary members of the Bar. Such a position indicates the lack even now of a proper appreciation of the professional ethical standards by which both Bench and Bar should be guided.

It should be observed that the Chancellor did not overlook the character witnesses when he said in his opinion, "the Court is not unmindful of the fact that many witnesses testified that the defendant enjoys a good reputation, but feels that a more accurate measure of his character is afforded by his conduct."

Nor did the Court of Appeals overlook the testimony of character witnesses, but, as Judge Avery observed in his separate concurring opinion, "it mattered not who and how many persons might testify as to their opinions of the defendant's character; that issue had been established by the finding of the Court of Impeachment."

██ Defendant further insists that he was entitled to a trial by a jury. This contention is fully answered in the opinion of Justice Felts, when he was a member of the Court of Appeals, in *Memphis & Shelby Co. Bar Asso. v. Vick,* 40 Tenn.App. 206, 290 S.W.2d 871.

The defendant has had a long and public trial before the Court of Impeachment, in which he was convicted of charges involving moral turpitude. Based upon this record the Chancery Court entered a decree permanently disbarring the defendant from the practice of law in Tennessee. The Chancellor's decree was affirmed by the Court of Appeals.

For reasons stated above this Court is unwilling to disturb the decrees of these Courts.

Let the decree of the Court of Appeals be affirmed.

BURNETT, FELTS and WHITE, JUSTICES, and MILLIGAN, SPECIAL JUSTICE, concur.