James Nelson RAMSEY,
Petitioner–Appellant,

v.

BOARD OF PROFESSIONAL RESPON-
SIBILITY OF the SUPREME COURT
OF TENNESSEE, Respondent–Appel-
lee.

Supreme Court of Tennessee,
at Knoxville.

April 17, 1989.

Rehearing Denied May 22, 1989.

James E. Foglesong, Foglesong, Cruz,
Shope and Kerr, Knoxville, Roger M. Adel-

man, Ned I. Miltenberg, Kirkpatrick & Lockhart, Washington, D.C., for petitioner-appellant.

Tennessee Dist. Attys. Conference, Joe Baugh, President, amicus curiae.

William W. Hunt, III, Disciplinary Counsel, Nashville, for respondent-appellee.

## OPINION

DROWOTA, Chief Justice.

Appellant, James Nelson Ramsey, the District Attorney General for Anderson County, has appealed the suspension of his law license for one-hundred and eighty (180) days. He raises four basic grounds as to why the Order of Suspension should not stand: (1) jurisdiction, (2) denial of due process, (3) constitutional right to free speech, and (4) the sufficiency of the evidence as a matter of law.

Appellant, a native of Oak Ridge, was in 1972 admitted and licensed by this Court to practice law in Tennessee. In 1978, Appellant ran for and was elected District Attorney General. Appellant contends that "after his election, he was faced with appearing before two judges who allied in political hostility against him."

A complaint was filed against Appellant with the Board of Professional Responsibility on April 18, 1985. A Petition for Discipline was filed by the Board on August 29, 1985. A three-member Hearing Panel of the Board heard this cause on March 16 and 17, 1987. The Hearing Panel filed its Findings and Judgment on April 8, 1987. The Panel stated:

"[I]t seems appropriate to observe that the issues in this case affect or involve many persons; nevertheless, the operative facts are focused primarily on two persons. The case presents the lengthy and rather sad saga of the relationship between these two persons. One of these persons is the [Appellant], James Nelson Ramsey, a licensed attorney and the duly elected District Attorney General of Anderson County, Tennessee. The other is Judge James B. Scott who likewise is a licensed attorney and the duly elected Judge of the Circuit and Criminal Court of Anderson County....

The relationship between the [Appellant] and Judge Scott is complex and it cannot be accurately described with one or even with a few words. Suffice it to say that the level of disaffection between them is exceeded only by the level of suspicion which each harbors for the other. The panel feels constrained to point out in this submission that the failure of these two elected officials to work cooperatively is harmful to the administration of the justice in Anderson County and borders on being a public disgrace.

The Petition for Discipline alleges multiple acts of contemptuous behavior by the [Appellant], multiple public expressions regarding either the court's adjudications of contempt or the Board of Professional Responsibility's prior adjudication of discipline, and in addition, the Petition charges a pattern of behavior which violates the Disciplinary Rules."

The Panel first addressed the charges of unethical conduct based on the Appellant's public expression to the media. The Panel found "the right of free speech may not be absolute, but it does appear to be broad enough to protect these expressions."

The Panel next addressed the contempt adjudications in 1983, and 1985, and found Appellant's actions were not only contemptuous but were also violative of DR 1–102(A)(5) and DR 7–106(C)(6).[1] The Panel further found Appellant's "conduct since 1979, as alleged in the Petition and established by the evidence, shows a pattern of disrespect for the Court. Every instance is different but they all contain a common thread of indifference toward and disrespect for the Court." The Panel adjudged that Appellant "should be suspended from the practice of law for a period of one-hundred and eighty (180) days." The Panel

---

1. "DR 1–102(A)(5) (A lawyer shall not engage in conduct that is prejudicial to the administration of justice)," and "DR 7–106(C)(6) (In appearing in his professional capacity before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal)."

concluded its findings and judgment by stating: "All concerned parties should examine their own conscience and strive to put an end to the hostilities and suspicion which appears to permeate the criminal justice system in Anderson County."

On July 1, 1987, the Appellant filed a Petition for Writ of Certiorari in the Chancery Court of Anderson County. A special judge was designated by this Court on July 29, to hear this cause. On December 15, 1987, a de novo review of the Panel's determination was held by Chancellor William H. Inman. The Chancellor abstained from the jurisdiction issue, finding that the Supreme Court "has the exclusive prerogative to determine the constitutionality of its Rules." The Chancellor found no merit in Appellant's due process argument as it related to the Hearing Panel members allegedly having interests adverse to Appellant. With reference to Appellant's argument that his right to free speech guaranteed by the Tennessee and United States Constitutions was violated—the Chancellor found Appellant's "pronouncements are simply not privileged." The Chancellor adopted the Hearing Panel's findings of fact and affirmed the Panel's suspension of Appellant's law license for 180 days.

Pursuant to Rule 9, Section 1.3 Appellant appealed the Chancellor's decision to this Court.

## I

## JURISDICTION

■ Appellant contends that, as an elected public official, neither Rule 8 nor Rule 9 of this Court's rules can be applied to him.[2] To do so, he submits, would violate both the Tennessee Constitution and the United States Constitution. Appellant avers that in suspending him the Disciplinary Board, and presumably the Chancery Court, exceeded its statutory jurisdiction and violated the constitutional principle of separation of powers.

Appellant argues that under the Tennessee Constitution, judges and district attorneys are treated identically and Article VI, Section 6 ordains a single and exclusive method of removal—impeachment by the Legislature. We agree that the exclusive method of removal from office for judges and district attorneys is by impeachment. However, this does not mean that district attorneys and judges are not subject to discipline. The right of this Court to establish Rules of practice and procedure for disciplining attorneys is clear. *Petition of Tennessee Bar Ass'n*, 539 S.W.2d 805, 810 (Tenn.1976). Rule 9, Section 1.1, Rules of the Supreme Court, states that "any attorney admitted to practice law in this State ... is subject to the disciplinary jurisdiction of the Supreme Court, the Board, the hearing committees, hereinafter established, and the Circuit and Chancery Court."

This Court has inherent, original and exclusive jurisdiction pertaining to the licensing of attorneys. *Belmont v. Board of Law Examiners*, 511 S.W.2d 461 (Tenn. 1974). Our authority "to make rules governing the practice of law is traditional, inherent and statutory. Such power is indispensable to the orderly administration of justice." *Barger v. Brock*, 535 S.W.2d 337, 342 (Tenn.1976). No person shall engage in the practice of law in Tennessee, except pursuant to the authority of this Court. Rule 7, Section 1.01, Rules of the Supreme Court.

The office of District Attorney constitutes no shield or protection to an attorney who violates his oath as an attorney or the disciplinary rules of this Court. Judges and district attorneys alike are not only subject to the disciplinary rules of this Court, but are subject to annual registration and payment of a license fee to support the attorney disciplinary system. *Petition of Tennessee Bar Ass'n*, 539 S.W.2d 805, 809 (Tenn.1976), Rule 9, Section 20.1.[3]

Disciplinary proceedings which result in disbarment or suspension from the practice

---

2. Rule 8, Rules of the Supreme Court, is entitled "Code of Professional Responsibility."

   Rule 9, Rules of the Supreme Court, is entitled "Disciplinary Enforcement."

3. Judges and district attorneys alike are also subject to mandatory continuing legal education. Rule 21, Section 2.01 et seq., Rules of the Supreme Court.

of law are not equivalent to impeachment. A disbarment is a removal of a law license; an impeachment is the removal from office. They are not the same. In *In re Murphy*, 726 S.W.2d 509 (Tenn.1987), Judge Ira Murphy's law license had been suspended based upon Rule 9, Section 14 of the Disciplinary Rules governing the conduct of attorneys. He was appealing the judgment of the Court of the Judiciary which recommended that the General Assembly remove him from office. He had already had his law license suspended by this Court in a different proceeding; however, he was continuing to receive his full salary as a judge because the sole method of removal from office is impeachment by the Legislature under Article VI, Section 6.[4]

The issues of whether Judge Murphy's federal convictions were serious crimes so as to warrant "disbarment" and whether the convictions were grounds for "removal from office"· were not identical. *Id.*, at 513, 514. Two separate and distinct procedures are involved in disbarment and impeachment. In *Schoolfield v. Tennessee Bar Ass'n*, 209 Tenn. 304, 353 S.W.2d 401 (Tenn.1961), the Senate "could not lawfully have passed upon the fitness of the judge to remain a member of the Bar; its powers as a Court of Impeachment are specifically limited to removal from office and disqualification." 209 Tenn. at 312, 353 S.W.2d at 404.

In response to Appellant's argument that he cannot be disbarred while serving as District Attorney General, the Court, in *Schoolfield*, specifically found that "[a] lawyer may be disbarred for misconduct occurring while he is acting as a judge...." 209 Tenn. at 313, 353 S.W.2d at 405. It follows that a lawyer may be disbarred for misconduct while acting as a district attorney.

Appellant avers that the Code of Professional Responsibility, Rule 8, Rules of the Supreme Court, at no point purports to regulate district attorneys. He is in error. Rule 8, DR 7–107 expressly applies to prosecutors. *See, In re John Zimmerman v. Board of Professional Responsibility*, 764 S.W.2d 757 (Tenn.1989). The Appellant testified that when he ran for office he promised he would be accountable to the public and he would "speak to the press subject to the rules of pretrial publicity," and he pledged to those present at the hearing, "I will not talk about pending cases, DR 7–107,...." Although Appellant testified that he would follow the mandates of DR 7–107, he contends he is not subject to disciplinary action under the Rules. This position seems somewhat inconsistent. We hold that the Disciplinary Board, the hearing committees and this Court have jurisdiction over the Appellant and all District Attorneys General admitted to practice law in this State. Rule 9, Section 1.1.

## II

### DENIAL OF DUE PROCESS

■ Appellant avers that the manner in which the proceedings were conducted before the Hearing Panel and the Chancellor violated the guarantees of procedural due process afforded by Article I, Section 8 of the Tennessee Constitution and the due process clause of the Fourteenth Amendment of the United States Constitution. He first avers that the Hearing Panel and the Chancellor were not neutral, detached, and impartial triers of fact. He alleges that the decision makers were tainted with the appearance of interest and bias. Appellant has made allegations of actual and apparent interest or bias on the part of the triers of fact, but the record fails to support these claims. Assuming, *arguendo*, that Appellant had proved interest or bias existed on the part of the Hearing Panel, this would have been cured by the de novo hearing in the Chancery Court. A de novo

---

4. Judge Murphy was convicted of a felony by a court of competent jurisdiction, and his law license was suspended by this Court pursuant to Rule 9, Section 14. This same rule applies to any attorney, be he judge, justice or district attorney general. If a district attorney were convicted of a felony and sentenced to imprisonment, his law license would be suspended, although he would still be entitled to his full salary unless removed from office by impeachment, Article VI, Section 6, or by the voters of his district at the next general election.

review in Chancery Court readjudicates the matter in a neutral forum, completely eliminating any interest or bias on the part of a Hearing Panel. *Cf. Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 183 (Tenn.1987); *Potts v. Gibson*, 225 Tenn. 321, 332, 469 S.W.2d 130, 135 (1971). Likewise, any interest or bias on the part of the Chancellor would be cured by our de novo review "upon the transcript of the record from the Circuit or Chancery Court, which shall include the transcript of evidence before the hearing committee." Rule 9, Section 1.3, Rules of the Supreme Court. *See, Scruggs v. Bracy*, 619 S.W.2d 101, 103 (Tenn.1981).

■ Appellant next asserts that due process requires that notice be given both of the charges and the facts which would support an adverse decision against an individual, and that the Petition for Discipline failed to meet the minimal standards of adequate notice. The first three paragraphs in the Petition set out the jurisdiction of the Board to consider this matter and the procedure by which the matter came before the Board. Paragraphs four through twelve set forth the facts, and paragraphs thirteen through fifteen set forth the various disciplinary rules which Appellant is accused of violating and a brief explanation of the reason for such violations. Counsel on direct examination of Appellant went over the allegations in the Petition paragraph by paragraph, and Appellant's answers to counsel do not indicate any misunderstanding by him as to what he was being charged with. We find that the Petition gave adequate notice to Appellant.

Appellant also contends that he was denied a true de novo hearing before the Chancellor, and that neither the Hearing Panel nor the Chancellor made a true judicial determination of his case. The record simply fails to support these contentions.

## III

## CONSTITUTIONAL RIGHT TO FREE SPEECH

The Petition for Discipline charged the Appellant with making four impermissible "remarks to the public" that were "gross, disrespectful, knowingly false, derogatory, and damaging to the legitimacy of, and trust in, the judicial system—in violation of DR 1–102(A)(5) and [DR] 8–102(B)." [5] The Petition also charged that Appellant's remarks constituted "conduct adversely reflecting upon [his] fitness to practice law, unprofessional conduct, and conduct rendering [him] unfit to be a member of the bar" in violation of DR 1–102(A)(1)(5) and (6) and T.C.A. § 23–3–201(5).[6] The remarks were as follows:

1. On February 23, 1979, Appellant was reported as having stated to *The Oak Ridger*: "My bottom line is that the judge is mucking up my cases and I can't stand for that."

2. On October 24, 1979, Appellant was reported as having said to *The Oak Ridger*: "I don't have time for this horse manure."

3. On March 30, 1981, Appellant wrote to *The Guiness Book of World Records* requesting inclusion in same as "The District Attorney with most contempt and disciplinary actions filed against him."

4. On December 3, 1981, Appellant was reported by *The Clinton Courier News* as having said of [the November 1981 recommendation by a hearing panel of the Board of Professional Responsibility that he be

---

**5.** DR 1–102. **Misconduct.**—(A) A lawyer shall not: (5) Engage in conduct that is prejudicial to the administration of justice.

DR 8–102. **Statements Concerning Judges and Other Adjudicatory Officers.**—(B) A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer.

**6.** "DR1–102. **Misconduct.**—(A) A lawyer shall not: ... (1) Violate a Disciplinary Rule.... (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any

other conduct that adversely reflects on his fitness to practice law."

"T.C.A. § 23–3–201. **Grounds for disbarment or discipline.**—Any attorney, solicitor or counselor at law admitted to practice in the courts of the state may be disbarred or suspended from the practice of law: ... (5) Who shall be guilty of any unprofessional conduct, dishonesty, malpractice, or any conduct which renders him unfit to be a member of the bar."

suspended for 90 days]: "When I find that I'm suspended by Almighty God, I'll know that I'm guilty of wrongdoing, not before."

The Hearing Panel found that although the "statements are crude and unbecoming of any licensed lawyer ... we do not believe they should be found to be violative of the Rules of Discipline. The right of free speech may not be absolute, but it does appear to be broad enough to protect these expressions." The Chancellor found, however, that the remarks "are simply not privileged" nor constitutionally protected. Disciplinary Counsel candidly points out that the remarks of Appellant are more impressive as indications of lack of remorse than as individual violations of the disciplinary rules. Disciplinary Counsel contends that "lack of remorse" is an aggravating factor in determining the type of discipline imposed or the degree of sanctions to be meted out.

Appellant admits making the above cited, out of court, public statements; however, he avers that the quote about "the judge is mucking up my cases" was creative journalism on the part of the reporter. He states that "I did not say those words. I do feel that's the case, however." The remarks made by Appellant were disrespectful, ill-advised, and, as the Hearing Panel stated, they were "crude and unbecoming of any licensed lawyer."

Appellant's principal argument is that each of his remarks is fully protected under the First Amendment of the United States Constitution and the Freedom of Speech clause of the Tennessee Constitution, Article I, Section 19.[7]

In dealing with First Amendment questions, we must balance the right of the speaker to communicate and the right of the listener to receive his expressions with the need of the courts to enforce attorney discipline to the end that a lawyer will not engage in conduct that is prejudicial to the administration of justice, DR 1–102(A)(5), or degrading to a tribunal, DR 7–106(C)(6),

and thereby diminishes the confidence of the public in our courts. There is thus a delicate balance between a lawyer's right to speak, the right of the public and the press to have access to information, and the need of the bench and bar to insure that the administration of justice is not prejudiced by a lawyer's remarks. In balancing these rights, we must ensure that lawyer discipline, as found in Rule 8 of the Rules of this Court, does not create a chilling effect on First Amendment rights.

■ The right of free speech and free discussion as it relates to the institution of the law, the judicial system and its operations, is of prime importance under our system and ideals of government. A lawyer has every right to criticize court proceedings and the judges and courts of this State after a case is concluded, so long as the criticisms are made in good faith with no intent or design to willfully or maliciously misrepresent those persons and institutions or to bring them into disrepute. As stated by this Court in *In re Hickey*, 149 Tenn. 344, 386, 258 S.W. 417, 429 (1923), "the members of the bar have the best opportunity to become conversant with the character and efficiency of our judges. No class is less likely to abuse the privilege, as no other class has as great an interest in the preservation of an able and upright bench. The rule contended for by the prosecution, if adopted in its entirety, would close the mouths of all those best able to give advice, who might deem it their duty to speak disparagingly."

Recently, the Oklahoma Supreme Court in addressing the free speech issue stated, "In keeping with the high trust placed in this Court by the people, we cannot shield the judiciary from the critique of that portion of the public most perfectly situated to advance knowledgeable criticism, while at the same time subjecting the balance of government officials to the stringent requirements of *New York Times Co. v. Sullivan* [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)]." *State ex rel. Okla-*

---

7. "The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty...." Article I, Section 19.

homa Bar Ass'n v. Porter, *766 P.2d 958, 968–69 (Okla.1988).*

Statements made by a lawyer designed to willfully, purposely and maliciously misrepresent the judges and courts of this State, and to bring those persons and institutions into disrespect, will not be tolerated or condoned. There is no First Amendment protection for remarks critical of the judiciary when those statements are false. A statement shown to be false will subject a lawyer to disciplinary sanctions. False statements with reference to judges and courts can be prejudicial to the administration of justice and subject to disciplinary action under DR 1–102(A)(5).

> It is the duty of an attorney to refrain from doing anything which will tend to destroy the confidence of the public in the courts, or to bring the courts into disrepute. . . .
>
> It is the duty of the lawyer to maintain toward the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges not being wholly free to defend themselves, are peculiarly entitled to receive the support of the bar against unjust criticism and clamor.
>
> This is a duty which the attorney owes to his profession; an obligation to which he should subordinate his personal animus toward the particular individual who happens to be filling the office.

*In re Hickey*, 149 Tenn. at 389, 258 S.W. at 430.

■ The remarks made by Appellant were disrespectful and in bad taste; however, we agree with the Hearing Panel that the right of free speech is "broad enough to protect these expressions" made by the Appellant. Use of the Disciplinary Rules to sanction the remarks made by General Ramsey in this case would be a significant impairment of First Amendment rights.

## IV

### THE SUFFICIENCY OF THE EVIDENCE

Appellant concludes by arguing that "no evidence was presented and no proof adduced sufficient to find that Appellant had violated any of the disciplinary rules listed in the Petition." We have before us concurrent findings of fact that Appellant violated DR1–102(A)(5) (conduct that is prejudicial to the administration of justice), and DR 7–106(C)(6) (undignified or discourteous conduct which is degrading to a tribunal).

The Hearing Panel made findings of fact which were adopted by the Chancellor. Our review of the record supports their findings. We shall describe some of the incidents in outline form, for a detailed recitation of the facts is unnecessary. On February 21, 1979, Judge Scott deferred action on a motion to suppress in a case involving Sally Davis. Appellant argued that if the confession in question was not suppressed before the trial commenced, jeopardy would attach and he would be unable to build a case without the confession. Appellant then stated that he would then file a *nolle prosequi.* Judge Scott then indicated that he would not allow the State to dismiss the action and the Appellant responded that he refused to prosecute the case. Judge Scott then announced to the jury that the State did not wish to prosecute the case. While the court was so announcing to the jury, the Appellant rose from his chair and "in a noisy and hostile fashion" slammed the door as he left the courtroom. Appellant admitted before Chancellor Inman that he did in fact slam the door. The court ordered the Appellant to appear on February 26, 1979, to show cause why he should not be held in contempt. Judge Joseph Nigro was designated to hear the contempt matter. At the hearing, Judge Nigro found Appellant guilty of contempt "in that he has been guilty of willful and deliberate attacks that attack the dignity of the court and show disrespect for the authority of the court." Judge Nigro ordered the Appellant to pay a $50.00 fine and serve five days in jail. The jail sentence was suspended, and no appeal was taken.

On October 15, 1979, Roger Ridenour was representing a criminal defendant named Culbertson. After a phone conver-

sation with Appellant, Mr. Ridenour believed that a plea-bargain had been agreed upon. The next day, after much confusion, Judge Scott asked Appellant if he had discussed a plea bargain agreement with Mr. Ridenour. Appellant refused to answer the question. Judge Scott again ordered Appellant to answer the question. Appellant again refused to answer. Appellant was then held in contempt and placed in jail pending his answer to the question. Appellant filed an appeal. The Court of Criminal Appeals affirmed Judge Scott's determination that Appellant acted in total disobedience to a lawful order of the Court. The Court of Criminal Appeals found "the trial judge exercised patience and restraint necessary before taking action for the administration of his court. Furthermore, the refusal to answer the question was in direct contempt." No further appeal was sought by Appellant.

On April 25, 1983, the Appellant was asked a direct question by Judge Scott and he refused to answer. Judge Scott found Appellant in contempt and fined him $50.00. An appeal was taken and the Court of Criminal Appeals, in affirming Judge Scott, held: "The transcript before us contains sufficient evidence to justify a rational trier of facts in finding General Ramsey guilty of contempt beyond a reasonable doubt." This Court denied Appellant's Rule 11 Application for Permission to Appeal.

The final incident which we will discuss has been termed the "capias contempt." Judge James Witt was appointed by this Court to hear this matter, which involved a contempt by Appellant of an order of Judge Scott. On April 15, 1985, Judge Witt found Appellant in contempt of court and fined him $50.00 and ordered him to serve 10 days in jail. No appeal was taken.

## CONCLUSION

■ Based upon the above-described incidents, we find that an attorney who fails to abide by court orders and fails to respond to questions from the court while appearing before the court, and who slams courtroom doors during hearings has not

only degraded that court, but acted in a manner prejudicial to the administration of justice. We find the evidence sufficient to support the decision of the Hearing Panel and the decision of the Chancellor that the Appellant violated DR 1–102(A)(5) and DR 7–106(C)(6). The next issue concerns sanctions. Notwithstanding the judgments below, upon determining the existence of aggravating or mitigating circumstances, this Court may modify the judgment of the trial court. *Disciplinary Bd. of Supreme Court v. Banks,* 641 S.W.2d 501, 504 (Tenn. 1982).

We are of the opinion that the foregoing violations are sufficient to justify the imposition of a suspension from the practice of law for 180 days, and the judgment of the Chancery Court is affirmed. However, under all of the circumstances of this case, we are of the opinion that it would be appropriate to have the Appellant's license suspended for only 45 of the 180–day period, and the remaining 135 days will be suspended provided the Appellant is not again found in contempt of court and in violation of the disciplinary rules of this Court during the remainder of his term of office ending August 31, 1990. If Appellant is again found to have violated Rule 8 of this Court, then his license to practice law will be automatically suspended for the remaining 135 days. Counsel for the parties shall agree upon the beginning date for Appellant's 45–day suspension. The suspension shall be completed on or before September 4, 1989. If the parties are unable to agree upon a beginning date, the Court will fix the time of commencement.

The judgment of the trial court, as modified, is affirmed at the cost of Appellant.

COOPER, HARBISON and O'BRIEN, JJ., and McLEMORE, Special Justice, concur.