**In re Judge Ira Henderson MURPHY.**

Supreme Court of Tennessee,
at Nashville.

March 3, 1987.

Judge Lloyd Tatum, Henderson, for Court of the Judiciary.

A.C. Wharton, Jr., Wharton & Wharton, Memphis, for respondent, Ira Henderson Murphy.

OPINION

FONES, Justice.

This is an appeal by Judge Ira H. Murphy from the judgment of the Court of the Judiciary recommending that the General Assembly remove him as a Judge of the General Sessions Court of Shelby County. The appeal to this Court is authorized by T.C.A. § 17-5-310.

The Court of the Judiciary initiated proceedings against Judge Ira H. Murphy on 2 September, 1986, charging him with having been found guilty of committing a felony by a court of competent jurisdiction and of being disqualified to hold the office of General Sessions Judge of Shelby County because of the suspension of his law license by the Supreme Court of Tennessee. Specifically, he was charged with violating Canons 1 and 2 A of the Code of Judicial Conduct promulgated by the Supreme Court of Tennessee, Rule 10 [1] and with violating T.C.A. § 17-5-302(4) and (8) [2]. By amendment he was charged with violating T.C.A. § 17-5-302(2), the willful or persistent failure to perform the duties of the office.

Judge Murphy's answer challenged the jurisdiction of the Court of the Judiciary to take any steps whatever leading to the removal or impeachment of a judge on the ground that such proceedings were constitutionally vested exclusively in the legislature. He further asserted that impeachment was reserved for crimes committed in office and that Judge Murphy was not charged with committing any crimes in office and finally that the charges were unconstitutionally vague.

The Court of the Judiciary convened in Memphis, Tennessee on 8 December 1986 and conducted a hearing on the charges against Judge Murphy. We narrate the material contents of the documentary evidence introduced at that hearing.

I.

On 20 December 1985 a grand jury convened by the U.S. District Court, Western District of Tennessee, Western Division, returned a thirteen count indictment charging Judge Murphy with eleven counts of mail fraud, one count of perjury and one count of obstructing justice. The mail fraud charges grew out of Judge Murphy's alleged participation in the registration with the office of the Secretary of State of Tennessee of an organization and the designation of individuals therein to obtain a permit to operate bingo games and his participation thereafter in the operation and profits of the games.

Tennessee law allowed certain tax-exempt organizations to conduct bingo games upon a registration showing that the organization and the persons who would conduct the games met all the statutory prerequisites, with a continuing obligation that none of the gross receipts inured to the benefit of any member or employee of the organization. Judge Murphy was charged with making false and fraudulent representations through the U.S. Mails to officials of the office of Secretary of State of Tennessee with respect to the status and relationship of the H.D. Whalum Lodge # 373 to other lodges in the attempt to represent

---

1. CANON 1. *A Judge Should Uphold the Integrity and Independence of the Judiciary*

    An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

    CANON 2. *A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities*

    A. A judge should respect and comply with the law and should conduct himself at all times

in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

2. 17-5-302. *Judicial offenses.*—Offenses of which the court may take cognizance shall include the following:

    ....

    (4) The commission of any act constituting a violation of so much of the Code of Professional Responsibility as set out in the rules of the Supreme Court of Tennessee as is applicable to judges;

    ....

    (8) Any other conduct calculated to bring the judiciary into public disrepute or to adversely affect the administration of justice.

it as having a tax exemption from the Internal Revenue Service; false and fraudulent representations about its location and the locations where bingo games would be conducted from time-to-time; false and fraudulent representations about the relationship of a number of individuals to the H.D. Whalum Lodge # 373; forging the name of one Charles Brooks on an application for and an annual accounting form submitted to the office of the Secretary of State; with writing checks to himself drawn on the bank account into which receipts from the bingo games conducted by virtue of the permit granted to the H.D. Whalum Lodge # 373 were deposited, totalling in excess of $9,000.

The indictment charged that the checks were written during the period from 15 June 1983 through 20 July 1984. The indictment charged that Judge Murphy was an elected General Sessions Judge for Shelby County for the term beginning in September 1982. The indictment also charged that the annual accounting form filed on behalf of H.D. Whalum Lodge # 373 on 9 June 1984, to which the signature of Charles Brooks was forged by Judge Murphy, had gross receipts of $701,844 from bingo games and that the net proceeds after expenses and contributions, .distributed to H.D. Whalum Lodge # 373 was $9,148.05.

In the twelfth count of the indictment Judge Murphy was charged with obstructing justice by attempting to influence the testimony before the grand jury of Charles Brooks with respect to his role in the H.D. Whalum Lodge # 373 bingo operations and the roles of other persons reported to the State as involved in those operations. Count thirteen charged that on or about 18 June 1985 Judge Murphy committed perjury while under oath as a witness before the federal grand jury investigating the bingo operations aforesaid and while being questioned as to his participation in the obtaining and renewing of permits from the State of Tennessee to operate bingo games.

On 30 June 1986 the trial of Judge Murphy on the thirteen count indictment began in the U.S. District Court for the Western District of Tennessee and on 11 July 1986 the jury returned its verdict of guilty as to all thirteen counts of the indictment.

On 5 September 1986 Judge Murphy was sentenced by the U.S. District Judge to five years imprisonment on each of the thirteen counts, with the sentences to run concurrent with each other and fined him $5,000. On 29 September 1986 Judge Murphy was ordered to report to the federal prison camp at Maxwell Air Force Base, Montgomery, Alabama, at noon on Monday, 20 October 1986.

On 20 October 1986 the United States Circuit Court of Appeals for the Sixth Circuit entered an order denying Judge Murphy's motion for a stay of execution of sentence pending his appeal, because the court concluded that none of the issues raised by Judge Murphy, on appeal, satisfied the court's definition of substantial.

## II.

On behalf of Judge Murphy it is insisted that the Legislature violated the separation of powers clauses of the State Constitution in creating the Court of the Judiciary, authorizing it to recommend the removal of judges and in providing for an appellate proceeding in this Court for a review of any such recommendation. It is said that Article VI, Section 6 of the Tennessee Constitution, having vested the power of removal of judges in the Legislature, any proceeding that could lead to that result could only take place in the Legislature. Judge Murphy's conclusion is based on the language of Article II, Section 2 that prohibits persons in one branch of government from exercising, "any of the powers properly belonging to either of the others."

We agree that the legislature cannot delegate the power to remove a judge to the executive or the judicial branches of government. There has been no delegation of that power. It resides as firmly in the Legislature as it did prior to the enactment of Public Acts of 1979, Chapter 356. Respondent is apparently saying that investigation that might lead to removal or recommendation that a judge be removed is the exercise of the power of removal. We dis-

agree. Article VI, section 6[3] grants the power of removal to the legislature but it does not impose the duty of investigating or monitoring judicial conduct on the Legislature nor specify what conduct should result in removal.

In *Richardson v. Young*, 122 Tenn. 471, 125 S.W. 664 (1909), the Supreme Court of Tennessee had before it the question of whether the Executive or the Legislative branch was vested with the power of appointment of the state board of elections. Mr. Justice Shields, writing for the Court, discussed the separation of powers doctrine as follows:

> The constitution does not define in express terms what are legislative, executive, or judicial powers.
>
> Theoretically, the legislative power is the authority to make, order, and repeal; the executive, that to administer and enforce; and the judicial, that to interpret and apply, laws.
>
> . . . .
>
> There are also some powers which, on account of the complexity of governmental functions, are difficult to classify, and may be, with equal propriety and correctness, committed to more than one department.
>
> . . . .
>
> "There are many acts possessing a legislative, executive, or judicial character, especially peculiar to the very nature of our system, and necessarily inherent in it, which time out of mind have not been exclusively exercised by these departments, and which, for the ease and efficiency of our system, could not be so exercised."

And again he says:

> "There are functions which are often performed by one of these departments of such a character that their performance does not necessarily belong to it, and where such is the case the authority of the departments may be required to perform the same or a similar function."

122 Tenn. at 493–496, 125 S.W. 664.

Any constitutional provision that is not self-executing requires legislative action to give it effect, to put it into operation. However, the rule is that even in the case of a constitutional provision that is self-executing the legislature may enact statutes to facilitate the exercise of the power granted therein. 16 Am.Jur.2d Constitutional Law §§ 139, 140, 141.

It is beyond question that the General Assembly has the power to pass legislation implementing its performance of its constitutional prerogatives that may involve cooperation of the other two branches of government.

In *Bank of Commerce & Trust Co. v. Senter*, 149 Tenn. 569, 260 S.W. 144 (1923), this Court said:

> The legislature has unlimited power to act in its own sphere, except so far as restrained by the constitution of the state and of the United States. *Henley v. State*, 98 Tenn. [665], 681, 41 S.W., 352, 1104, 39 L.R.A., 126.

149 Tenn. at 576, 260 S.W. 144.

The impeachment provisions found in Article V, Tennessee Constitution were implemented by legislation enacted prior to the publication of the Code of 1858 and are carried in the present Code as T.C.A. §§ 8–46–101 through 8–46–205.

The legislation implementing Article VI, section 6, Tennessee Constitution is found in the Public Acts of 1979, chapter 356, wherein the Court of the Judiciary was created.

A judge or any other official subject to impeachment, can only be impeached for a

---

3. Sec. 6. *Removal of judges and attorneys.* —Judges and Attorneys for the State may be removed from office by a concurrent vote of both Houses of the General Assembly, each House voting separately; but two-thirds of the members to which each House may be entitled must concur in such vote. The vote shall be determined by ayes and noes, and the names of the members voting for or against the Judge or Attorney for the State together with the cause or causes of removal, shall be entered on the Journals of each House respectively. The Judge or Attorney for the State, against whom the Legislature may be about to proceed, shall receive notice thereof accompanied with a copy of the causes alleged for his removal, at least ten days before the day on which either House of the General Assembly shall act thereupon.

crime committed in his or her official capacity. Article V, section 4, Tennessee Constitution. The removal provision in Article VI, section 6 contains no specification of causes for removal. This Court had provided a limited definition of grounds for removal in *The Judges Cases*, 102 Tenn. 509, 53 S.W. 134 (1899). There the Court said that the removal contemplated by Article VI, section 6 was for cause affecting the official personally or the administration of his office, to be effected after notice and trial.

Again, in *Bank of Commerce v. Senter, supra,* the Court said:

> [I]n passing upon the validity of legislative enactments, as we are here called upon to do, courts do not assume that the Legislature intentionally passed an invalid act, because legislators, as well as judges, are bound by the law, and it is understood that they weighed the constitutionality of the act while it was before them and held it valid. Wherefore it is the rule that every reasonable doubt must be resolved in favor of the act, and the courts cannot adjudge it invalid unless the violation of the constitution is in their judgment clear, complete, and unmistakable. *Henley v. State*, 98 Tenn. [665], 680, 41 S.W., 352, 1104, 39 L.R.A., 126; *State v. Alabama Fuel Co.*, 188 Ala., 487, 66 South., 169, L.R.A. 1915A, 185, Ann.Cas. 1916E., 752; Cooley, Const. Lim. (6th Ed.), 218; Black, Const. Law, section 391.

149 Tenn. at 576–77, 260 S.W. 144.

We find no improper delegation of power and no constitutional infirmity in the enactment of Acts of 1979, chapter 356.

### III.

■ Judge Murphy complains that the proceeding in the Court of the Judiciary was initiated by an unsworn notice, contrary to the requirements of T.C.A. § 17–5–304. He suggests that the remedy for this omission is dismissal or remand to the Court of the Judiciary with instructions to restart the proceedings.

T.C.A. § 17–5–304 requires that the court proceed with its investigation by obtaining sworn statements from, "the complaining party, the judge under investigation and any witnesses identified or produced by them." That sentence contains the qualifying phrase that investigations "are not limited," to those instituted by a sworn statement of a complaining party. In initiating this proceeding the presiding judge of the Court of the Judiciary signed the notice of charges, and recited therein that it had come to the attention of the Court of the Judiciary that Murphy had been convicted of a felony and that his law license had been suspended. Those charges were based upon orders and decrees of courts of record located in this State and we interpret T.C.A. § 17–5–304 as authorizing the Court to begin an investigation or a formal hearing upon either the sworn complaint of a party or upon knowledge of misconduct of judges that comes to the attention of the Court by any means of reliable information other than a single sworn complaint. There is no merit to this issue.

### IV.

■ Judge Murphy says that this Court, in response to his motion, should have recused ourselves, because the members of the court are "interested" as contemplated by Article VI, section 11 of the Tennessee Constitution; that our action in suspending Judge Murphy's law license was based upon the same facts that are the foundation for this removal proceeding, to-wit: his conviction of federal crimes.

In *Chumbley v. Peoples Bank & Trust Co.*, 165 Tenn. 655, 57 S.W.2d 787 (1933), the constitutional mandate of recusal by reason of interest was defined as follows:

> "The interest which disqualifies a judge is a direct pecuniary interest, or one which involves some individual right in the subject-matter of the litigation, whereby a liability or pecuniary gain must occur on the event of suit."

57 S.W.2d at 788.

The order that this Court entered suspending Judge Murphy's law license was based upon Rule 9, section 14 of the Disciplinary Rules governing the conduct of at-

torneys. That rule mandates the suspension of an attorney's license upon the filing with the Court of a certificate that he or she has been convicted of a serious crime. The documents reflecting the convictions of Judge Murphy for mail fraud, obstructing justice and lying to the grand jury were filed with the Board of Professional Responsibility; that Board made the determination that the convictions were for "serious" crimes as defined in Rule 9, section 14, Supreme Court Rules. The serious crimes question being beyond any reasonable doubt and to a moral certainty, we concurred and ordered Judge Murphy's license suspended.

Judge Murphy quotes a passage from *In Re Cameron*, 126 Tenn. 614, 151 S.W. 64 (1912), that he asserts as authority for the necessity of our recusal. In that case Judge McReynolds, a trial judge, cited Cameron, a practicing lawyer, for contempt of court for altering a court reporter's stenographic transcript of a trial and for lying in open court. Judge McReynolds cited Cameron to appear for trial, tried him for contempt, found him guilty and disbarred him. On appeal, this Court held Judge McReynolds was disqualified from trying Cameron because the judge had openly and publicly made statements that whether Cameron admitted the charges or not, he was guilty and the judge would prove it. In addition, the citation issued by Judge McReynolds was so framed as to amount to a prejudgment of the guilt of Cameron.

The issue of whether Judge Murphy's federal convictions were serious crimes and whether those convictions are grounds for the removal of a judge are not identical issues. No member of this Court has prejudged the issue of whether Judge Murphy should be removed from office because of those convictions. Justice Neil, writing for the court in *Cameron* had this to say:

In what has been said we are not to be understood as holding that a judge can be recused on the ground that he has already decided the case, merely by motion supported by affidavits so stating. It must appear, as in the present case, beyond any doubt that such decision has been made. If the judge deny such to be the fact, that ends the controversy; and it cannot be pursued further, or re-examined on that point in this court.

126 Tenn. at 659–60, 151 S.W. 64.

Judge Murphy has not raised the issue in the proceedings below or in this Court that his convictions were insufficient cause for removal, which could be interpreted as conceding that cause exists. There is no merit to this issue.

## V.

■ Judge Murphy contends that the members of the Court of the Judiciary are selected in violation of Tennessee Constitution, Article VI, section 4.

The short answer to that assertion is that the legislative purpose expressed in T.C.A. § 17–5–101,[4] the jurisdiction limited to investigating the conduct of active judges and the limitation of action as a result of its investigation, prevent that body from being subject to Article VI, section 4. It is not a circuit or chancery court or "other inferior court" and it is not "assigned" any "district" in this state. It is clearly and completely outside the state court system as established by Article VI, of the Constitution and legislative action from time-to-time throughout our history. It is nothing more than an investigative body, limited in jurisdiction to the investigation of judges' conduct and the issuance of sanctions that

---

**4.** 17–5–101. *Legislative intent.*—It is expressly declared to be the legislative intent in the enactment of this chapter:

(1) To provide an orderly and efficient method of making inquiry into:

(A) The physical, mental and/or moral fitness of any Tennessee judge;

(B) His or her manner of performance of duty; or

(C) His or her commission of any act calculated to reflect unfavorably upon the judiciary of the state or bring it into disrepute or which may adversely affect the administration of justice in the state.

(2) To provide a process by which appropriate sanctions may be imposed.

(3) To implement article 6, § 6 of the Constitution of Tennessee by providing a procedure for the removal of judges.

do not affect the status of the office, impose a fine, or impair his or her liberty. There is no merit to this issue.

## VI.

 Finally, Judge Murphy says that these proceedings should be held in abeyance until his appeal in the federal courts are exhausted. We disagree. The jury's verdict finding him guilty of thirteen counts of a thirteen count indictment, approved by the trial judge, removed the presumption of innocence. The United States Court of Appeals for the Sixth Circuit has found that Judge Murphy's appeal raises no substantial issues. The indictment, the trial and his imprisonment have kept him from performing his duties as a general sessions judge for a substantial period of time. A reversal of Judge Murphy's conviction would not alter that fact. Nor would it remove the stigma and prejudice that his conduct and the resulting trial have wrought upon the judicial process. There is no reason for this Court to delay proceedings.

We are charged with the responsibility of reviewing the recommendation of the Court of the Judiciary, de novo, with no presumption of correctness.

Judge Murphy has been convicted of practicing fraud upon an office of the State of Tennessee, repeatedly, over a period of years and during the first three years of his term as a general sessions judge, and of realizing personal profit as a direct result of those fraudulent and illegal acts. In the course of the investigation of his activities he committed acts that sought to obstruct justice, and lied to the federal grand jury. He has clearly failed to observe the highest standards of conduct that are necessary to preserve the integrity and independence of the judiciary in violation of Canon 1, Code of Judicial Conduct, and has failed to "respect and comply with the law and ... conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," in violation of Canon 2 A, Code of Judicial Conduct. The acts of Judge Murphy that resulted in his federal convictions are also

violations of T.C.A. § 17–5–302(4) and (8). The suspension of his law license and his imprisonment have prevented him from performing his duties as a general sessions judge at least since July 24, 1986, and has resulted in a violation of T.C.A. § 17–5–302(2).

It is the recommendation of this Court that Judge Murphy be removed from the office of General Sessions Judge of Shelby County.

BROCK, C.J., HARBISON and DROWOTA, JJ., and CORNELIUS, Special Justice, concur.