IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE



FOR PUBLICATION

Filed:  August 25, 1998

IN RE:
**HONORABLE BILLY WAYNE WILLIAMS**     )     No.  01S01-9805-CJ-00096
**JUDGE, GENERAL SESSIONS COURT**     )
**LAUDERDALE COUNTY, TENNESSEE**     )     (Court of the Judiciary)

**For the Respondent:**          **For the Court of Judiciary:**

J. Thomas Caldwell          Jerry Scott
Ripley, Tennessee          Disciplinary Counsel
                            Murfreesboro, Tennessee

**O P I N I O N**

COURT OF JUDICIARY AFFIRMED          ANDERSON, C.J.

This cause is before the Court upon Judge Billy Wayne Williams' appeal from the Court of the Judiciary's judgment recommending that he be removed from the office of General Sessions Court Judge of Lauderdale County.

The Court of the Judiciary was created by the Legislature to investigate and determine charges of judicial misconduct. The legislation provides a process by which sanctions may be imposed and a process for implementation of Article VI of the Tennessee Constitution by providing a procedure for the removal of Judges from office. Tenn. Code Ann. § 17-5-301(b)(1)(1994).

After considering the briefs and arguments of the parties, and conducting a *de novo* review of the record, we conclude that the charges of judicial offenses committed by Judge Williams were established by clear and convincing evidence.

We therefore affirm the action of the Court of the Judiciary suspending Judge Williams and recommending his removal from office. In light of this conclusion, the relevant statutes require that the question of Judge Williams' removal from office be transmitted to the General Assembly for its review pursuant to Tenn. Code Ann. § 17-5-311 (Supp. 1997). The Clerk of this Court shall send written notice to the speaker of the senate and the speaker of the house of representatives of the action of this Court and shall certify the entire record on appeal, briefs, and a copy of this opinion to the speaker of the senate and the speaker of the house of representatives in accordance with the procedures and time limits set forth in Tenn. Code Ann. § 17-5-311(b)(Supp. 1997).[1]

---

[1] Under the Tennessee Constitution, a judge may be removed from office by a concurrent vote of both houses of the Tennessee General Assembly. Tenn. Const. art. VI, § 6; see also In re Murphy, 726 S.W.2d 509, 512 (Tenn. 1987).

## BACKGROUND

After an investigation by a three judge investigative panel of the Court of the Judiciary, Billy Wayne Williams, General Sessions Court Judge for Lauderdale County, Tennessee, was formally charged with committing judicial offenses in violation of the Code of Judicial Conduct and Tenn. Code Ann. § 17-5-302 (1994). The formal charges included three counts: count one charged that Judge Williams used an inmate from the Lauderdale County Jail to work on a house being built for Judge Williams' son; count two charged that Judge Williams tried a felony offense when he knew or should have known that General Sessions Court did not have jurisdiction over felony offenses; and count three charged that Judge Williams falsely answered interrogatories and falsely testified in a federal court proceeding.

A trial was held before the Court of the Judiciary, composed of nine judges. According to the evidence, Judge Williams was elected in 1990 to the part-time position of General Sessions Court Judge in Lauderdale County, Tennessee. Judge Williams, a retired highway patrolman, had never attended law school and was not a licensed attorney.[2] What little legal training he possessed as a General Sessions Court Judge stemmed from attending seminars sponsored by the Tennessee General Sessions Judges' Conference and the Administrative Office of the Courts.

Count one charged Judge Williams with removing inmate Ira Welch from the Lauderdale County Jail to work on a house being constructed for Williams' son. Judge Williams conceded that he twice took Welch from the jail to his son's house. He testified that on the first occasion, Welch assisted in wiring the house by pushing electrical wires through an access hole under the house, but on the second occasion Welch performed no work. Judge Williams testified that he bought lunch and cigarettes for Welch in compensation, and that he gave Welch a jacket that was not returned.

---

[2] Lauderdale County was one in which a General Sessions Court Judge was not required to be a licensed attorney. Tenn. Code Ann. § 16-15-5005 (1994).

Welch, however, testified that he worked for Judge Williams at the house for three or four days, and that his only compensation was two packs of cigarettes.

Judge Williams asserted that he was unaware that the practice of using prison labor for personal work was illegal. Knowing and willful use of inmate labor by a private citizen, if not part of an approved work release program, is a class A misdemeanor. Tenn. Code Ann. § 41-2-148(d)(2)(1997). He believed that he had committed no impropriety because other county officials had also used prison labor as an "informal work release program." Although several other witnesses testified that private individuals in Lauderdale County had a long standing practice of using inmate labor for personal work, it was undisputed that Lauderdale County did not have a formal, approved work release program.

Count two charged Judge Williams with improperly trying Kevin Maben in General Sessions Court for the felony of hindering a secured creditor, when he knew or should have known that a General Sessions Court Judge has no jurisdiction to render a judgment in a felony case. The Maben case concerned an automobile purchased by Kevin Maben from Bud Fitzhugh. When Maben failed to pay for the car, Fitzhugh sought and obtained a money judgment against Maben in Judge Williams' General Sessions Court in the amount of $1,100.41, plus court costs. There was no order of possession for the automobile. In August of 1993, Fitzhugh, who had been unable to collect on the judgment, filed a criminal warrant charging Maben with hindering secured creditors in violation of Tenn. Code Ann. § 39-13-116, a class E felony.

On August 27, 1993, Maben was tried before Judge Williams and convicted of the felony offense. He was sentenced to serve eleven months and twenty-nine days in the Lauderdale County Jail, suspended, with restitution of $1,219.00 to be paid in sixty (60) days. Over the next two years, a capias was issued for Maben's arrest on at least four occasions for failing to pay restitution, and Maben served approximately sixty-

seven (67) days in jail. His conviction was ultimately expunged based on the General Sessions Court's lack of jurisdiction to convict him of a felony.

Judge Williams admitted at trial that as General Sessions Court Judge he lacked the jurisdiction to try and convict Maben of a felony offense. He asserted that he did not know the offense of hindering a secured creditor was a felony because he relied in good faith on the District Attorney to separate felony charges from misdemeanors. The evidence further revealed, however, that Judge Williams had failed to advise Maben of his right to counsel, to indictment by grand jury, to a jury trial, and to subpoena and cross-examine witnesses. There was also evidence establishing that Judge Williams had tried at least five other individuals on the felony charge of hindering a secured creditor.

Count three charged Judge Williams with falsely answering interrogatories and falsely testifying in a civil rights action brought against him by Kevin Maben in United States District Court for the Western District of Tennessee. After a summary judgment was entered in favor of Maben on liability, discovery was taken relative to assets. On July 28, 1997, Judge Williams answered an interrogatory under oath by stating that he had $110,097.17 in an account with Capital Market Groups, Inc., at National Bank of Commerce (NBC). On August 1, 1997, Judge Williams testified under oath that he had not transferred the NBC funds out of his name; he also specifically testified that he had $110,097 in his NBC account. After a jury returned a verdict on August 5, 1997, for Maben in the sum of $75,000 compensatory damages and $300,000 punitive damages, an injunction was issued that day to prohibit transfer of the NBC account. It was then learned that Judge Williams had liquidated the NBC account on July 23, 1997.

The District Court held a hearing on charges of contempt and testifying falsely. Judge Williams asserted his Fifth Amendment privilege to all questions regarding the NBC account. An employee of NBC, however, testified that Judge Williams telephoned

her on July 18, 1997, and ordered her to liquidate the account. A check was issued to Williams on July 23, 1997, and the check was cashed. The District Court ruled that the evidence was "overwhelming" that Judge Williams had knowingly made material false statements during the proceedings with regard to the NBC account. It ordered that the funds be paid into the registry of court and that the matter be referred to the United States Attorney for a possible prosecution for perjury.

Judge Williams testified before the Court of the Judiciary that the answers to the interrogatories had been prepared by his attorney based on records that were several weeks old, and that he did not read the responses before signing them. He also testified that he had merely transferred the NBC funds to an account jointly owned by he and his wife. The NBC employee also testified before the Court of the Judiciary and again related the details with regard to receiving instructions from Judge Williams to liquidate the account in July of 1997.

## COURT OF THE JUDICIARY'S FINDINGS AND CONCLUSIONS

After the trial, the Court of the Judiciary found that all of the charges against Judge Williams had been established by clear and convincing evidence. As to count one, the court observed that using an inmate for personal benefit is a misdemeanor criminal offense under Tennessee criminal law, and held that the conduct violated Canons 1A and 2A of the Code of the Judiciary.[3] Canon 1A states in part that "a judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Canon 2A states that "a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

---

[3] The Court of the Judiciary's opinion notes that a prior version of the Code of Judicial Conduct is applicable to counts one and two against Judge Williams, while the present version of the Code applies to count three.

With regard to count two, the Court of the Judiciary found that Judge Williams'

repeated violations in trying felony offenses without jurisdiction, and failing to advise

those before the court of their most basic constitutional rights, went beyond mere legal

error and established a failure to maintain professional competence as required by

Canon 3B(2):

> The evidence clearly established that Judge Williams
> exhibited a persistent pattern of making legal errors.
> Uncontroverted evidence established that on at least six
> occasions he tried felony cases that he lacked jurisdiction to
> try. Moreover, during his testimony before this Court, Judge
> Williams revealed an appalling lack of knowledge of the
> legal rights of the defendants who appear in his court and a
> pervasive pattern of ignoring those rights. . . . This Court
> finds that Judge Williams clearly exhibited a persistent
> pattern of making legal errors, and that those errors were
> serious and involved the basic constitutional and statutory
> rights of those who appeared before him.

The court also held that the conduct violated Canon 2A, i.e., that a judge shall respect

and comply with the law.

Finally, as to count three, the Court of the Judiciary found that Judge Williams'

false interrogatories and testimony violated several ethical provisions: Canon 1A, that a

judge "personally observe high standards of conduct . . . so that the integrity and

independence of the judiciary will be preserved"; Canon 2A, that a judge "shall respect

and comply with the law and shall act at all times in a manner that promotes public

confidence in the integrity and impartiality of the judiciary"; and Canon 4(A)2, that a

judge conduct his or her extra-judicial activities so as not to "demean the judicial office."

In light of these findings of fact and conclusion of law, the Court of the Judiciary

held:

> Given the seriousness of the judicial offenses committed by
> Judge Williams, the Court hereby recommends removal of
> Judge Williams from office. This Court notes that its
> recommendation for removal from office is subject to appeal
> to the Tennessee Supreme Court and action by the
> Tennessee General Assembly. Tenn. Code Ann. § 17-5-
> 310, 311. Pending such appeal and any applicable action

by the General Assembly, this Court hereby suspends Judge Williams from office effective upon the entry of this Opinion and Order until the Tennessee Supreme Court and, if applicable, General Assembly have acted on this Court's recommendation or until Judge Williams' term of office shall expire. . . .

Judge Williams elected to appeal to this Court. In addition to challenging the sufficiency of the evidence in several respects, he argues that as a non-lawyer, he was unaware of many of the relevant legal and ethical provisions and should be held to a lower standard than judges who are licensed attorneys. We review his contentions below.

## ANALYSIS

### *De Novo* Review

At the conclusion of a full hearing, the Court of the Judiciary is required to make findings of fact and conclusions of law, and is authorized to take the following action:

(1)     Suspension without impairment of compensation for such period as the court determines;

(2)     Imposition of limitations and conditions on the performance of judicial duties, including the issuance of a cease and desist order;

(3)     Private admonition by the investigative panel of the court
with the consent of the judge. . . .;

(4)     Enter into a deferred discipline agreement; and

(5)     Enter judgment recommending removal of the judge from
office.

Tenn. Code Ann. § 17-5-301(f)(1)-(5)(Supp. 1997).

Our review of the Court of the Judiciary's findings and conclusions is *de novo*. Tenn. Code Ann. § 17-5-310(b)(1)(1994). Although no presumption of correctness is afforded to the findings or conclusions, we observe that the nine-member court below was in a better position to determine credibility issues and resolve conflicts in the

-8-

evidence because it had the benefit of hearing the testimony and observing the demeanor of the witnesses firsthand. Nonetheless, our *de novo* review of the transcript and the record indicates that the evidence was not only clear and convincing, but overwhelming in establishing the three counts against Judge Williams.

With regard to count one, Judge Williams admitted that he used an inmate from the Lauderdale County Jail to help build a house for Williams' son. He testified:

> [T]hat morning I came to town and rode around the Square looking for somebody to help me to put some wire, I had to run some wire from the panel into the kitchen area. Someone had to go under the house and push the wire back up through the floor. And I couldn't find anyone so I went by the jail and I asked the dispatcher, I said 'do you know anybody that can got there and help me push some wire up the floor.' And [inmate] Ira Welch was sitting there in a chair and another subject with him and both of them jumped up . . . . And the dispatcher told Ira that he could go. . . .
>
> He rode out there with me and I had to push the wire down through the floor from the panel . . . . So I pushed the wires down through there and he crawled over to the kitchen area and stuck them back up.

Ira Welch testified that he did not volunteer; that he was removed from jail and accompanied Judge Williams to work on Williams' son's house on several occasions. While there was some conflicting evidence regarding the number of times Welch worked, the extent of work, and the payment, or lack thereof, the clear and convincing evidence -- indeed, the uncontradicted evidence -- demonstrated that Judge Williams engaged in these acts. Judge Williams' defense was that he was unaware that such conduct constituted a crime and that other private individuals in Lauderdale County had committed the same acts, notwithstanding the lack of an approved work release program. Neither assertion serves as a defense.

As the Court of the Judiciary discussed, the use of a prison inmate for a private purpose is a criminal offense:

> Any private citizen, corporation, partnership or other
> business knowingly or willfully using inmate labor in violation
> of subsection (b) commits a class A misdemeanor and, upon
> conviction, shall be punished by a fine of one thousand
> dollars ($1,000) and by imprisonment for not more than
> eleven (11) months and twenty-nine (29) days. Each day
> inmate labor is used in violation . . . constitutes a separate
> offense.

Tenn. Code Ann. § 41-2-148(d)(2)(1997). The statute makes an exception where the inmate is used in an approved work-release program. Tenn. Code Ann. § 41-2-148(b) (1997).

Accordingly, we fully agree with the Court of the Judiciary's conclusion that Judge Williams conduct violated Canons 1A and 2A of the Code of Judicial Conduct. The former provision states that "a judge should participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Canon 2A states that "a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." See also Tenn. Code Ann. § 17-5-302(3) & (8)(1994).

With regard to count two, there was clear and convincing evidence that Judge Williams tried and convicted an individual for a felony offense notwithstanding that the General Sessions Court lacked jurisdiction. Judge Williams concedes as much. He also asserts that while he knew the difference between a felony and a misdemeanor, he acted in good faith reliance on the District Attorney General to sort the felony offenses from the misdemeanors in his court.

The evidence in the record belies this defense. The trial of Kevin Maben for a felony offense was not an isolated occurrence. Moreover, it was accompanied by Judge Williams' demonstrated and repeated failures to advise defendants in his courtroom of their most basic and fundamental constitutional rights. On numerous

occasions before the Court of the Judiciary, Judge Williams testified that he asks defendants only whether they plan to hire an attorney and whether they intend to plead guilty or not. He admitted that he did not advise defendants that they have a right to an attorney, a right to have a grand jury review the charges, a right to a jury trial, and a right to confront witnesses. As the Court of the Judiciary found: "Judge Williams revealed an appalling lack of knowledge of the legal rights of the defendants who appear in his court and a pervasive pattern of ignoring those rights."

Judge Williams' conduct in this regard apparently stemmed from his lack of legal knowledge and training -- yet, as a judicial officer, Judge Williams failed to take appropriate steps to correct these deficiencies. We agree with the Court of the Judiciary that these circumstances establish a violation of Canon 2A, (judge shall respect and comply with the law), and Canon 3B(2)(judge shall maintain professional competence); see also Tenn. Code Ann. § 17-5-302(3)(1994).

Finally, with regard to count three, our review demonstrates that there was clear and convincing evidence to establish the charges against Judge Williams. The testimony showed that Judge Williams liquidated over $100,000 of assets in an NBC account on July 18, 1997, and received a check for the proceeds on July 23, 1997. Judge Williams nonetheless answered an interrogatory under oath on August 1, 1997, stating that he had not transferred the NBC funds out of his name. Moreover, on August 1, 1998, he testified under oath in federal court as follows:

> Q:    So in your NBC account you have $110,097.00 ?
>
> A:    Yes, sir.
>
> Q:    Have you transferred that out of your name since last month
>        or do you still own that?
>
> A:    I did not have it transferred, no, sir, I don't transfer.

Again, the interrogatory response and the testimony under oath occurred <u>after</u> Judge Williams had in fact liquidated the NBC account in question.

Judge Williams' testified before the Court of the Judiciary that he failed to read the interrogatory responses prepared by his attorney, even though the responses bore his signature and were made under oath. He also testified that he had transferred the NBC account to one he owned jointly with his wife, but never disposed of the proceeds and therefore he had not transferred the account. Judge Williams' testimony, however, is contradicted by the findings and conclusions made by the federal district judge during the federal proceeding: that the proof was "overwhelming" that Judge Williams made false statements and false testimony under oath.

The Court of the Judiciary found that the record proved by clear and convincing evidence that Judge Williams deliberately made false statements in the federal court proceedings concerning the transfer of the assets in the NBC account.

Our independent and *de novo* review of the record also leads us to agree with the Court of the Judiciary and conclude that clear and convincing evidence establishes the charges in count three. We also agree with the Court of the Judiciary's conclusion that Judge Williams' conduct and false statements under oath constituted violations of the Code of Judicial Conduct. <u>See also</u> Tenn. Code Ann. § 17-5-302(3)(1994). In particular, Canon 1A, which requires that a judge "personally observe high standards of conduct . . . so that the integrity and independence of the judiciary will be preserved"; Canon 2A, which requires that a judge "respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"; and Canon 4A(2), which states that a judge comport his or her extrajudicial activities in a manner that does not "demean the judicial office."

Accordingly, we have conducted a *de novo* review of the entire record before the Court without affording a presumption of correctness to the findings or the conclusions entered by the Court of the Judiciary. Tenn. Code Ann. § 17-5-310(b)(1)(1994). There is no question, in our view, that all the charges against Judge Williams were supported by clear and convincing evidence, and that these charges amounted to judicial offenses in violation of the Code of Judicial Conduct and Tenn. Code Ann. § 17-5-302 (1994) .

## Standards for Non-Lawyer Offenses

A defense argued by Judge Williams throughout the proceedings was that as a part-time, non-lawyer judge, he should have been held to a different standard than full-time judges who are licensed attorneys. He also argues, particularly as to counts one and two, that he was unaware that his conduct was illegal or unethical or in violation of any provision in the Code of Judicial Conduct.

Judge Williams' arguments are specifically rebutted by the Code of Judicial Conduct, which states that "anyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions . . . is a judge within the meaning of this Code." Although properly elected as a non-lawyer General Sessions Court Judge in Lauderdale County under the statutory law, it is beyond dispute that Judge Williams was a judicial officer performing all of the judicial functions attendant to the office. The Code of Judicial Conduct, therefore, was expressly applicable to Judge Williams.[4]

Moreover, we cannot accept the view that Judge Williams' ignorance of the law or the pertinent ethical standards is a factor that we should consider in his favor. As the Supreme Court of Mississippi has observed:

> Any county judge, circuit judge or chancellor who pleads
> ignorance as a defense to a violation of the Code of Judicial
> Conduct should do so with great care. Claim of ignorance of

---

[4] A few of the provisions in the Code are not applicable to part-time judges, none of which are at issue in this case. See Rule 10, Application of the Code of Judicial Conduct, Subsection (C).

the duties of his office or negligence in carrying out those duties as a defense to judicial misconduct is tantamount to an admission by an accused judge that he does not possess the qualifications necessary to hold the office to which he has been elected.

Miss. Com'n on Jud. Perf. v. Chinn, 611 So.2d 849, 856 (Miss. 1992)(quoting, In Re Collins, 524 So.2d 553 (Miss. 1987)). The Mississippi Court further observed that "when a person assumes the office of [Judge], he or she accepts the responsibility of becoming learned in the law." Id. at 856.

We agree with these observations. Judge Williams' ignorance of the relevant standards highlights only his failure to accept the responsibilities of the office, leading to the judicial offenses committed in this case. Ignorance cannot be accepted as a defense in this case, nor can a lesser standard of ethical conduct be applied to Judge Williams.

**CONCLUSION**

The Court of the Judiciary unanimously recommended that Judge Williams should be removed from office. We unanimously agree. Based on our *de novo* review of the record, we find clear and convincing evidence to establish that Judge Billy Wayne Williams committed the judicial offenses as set forth in this opinion. The offenses were serious, reflecting not only poor performance and poor judgment both in and out of the courtroom, but in two of the three counts, there was evidence of the actual commission of crimes. These offenses, standing alone, provide justification for recommendation of removal.

In recommending removal, however, it is also significant that Judge Williams' conduct violated the Code of Judicial Conduct and reflected poorly on the judicial system as a whole. Public confidence in the performance and impartiality of the judiciary is maintained only when judges rigorously adhere to the Code of Conduct.

Violations of the Code, if left unaddressed, diminish public confidence and injure the entire judicial system. As the Preamble to the Code of Judicial Conduct states:

> Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.

Sup. Ct. Rule 10, Preamble to Code of Judicial Conduct; see also In re Murphy, 726 S.W.2d 509, 512 (Tenn. 1987).

Accordingly, we affirm the Court of the Judiciary's recommendation that Judge Billy Wayne Williams be removed from office. The Clerk of this Court shall send written notice to the Speaker of the Senate and Speaker of the House of Representatives of the action of this Court and shall immediately certify the record on appeal, briefs, and a copy of this opinion to the Speaker of the Senate and the Speaker of the House of Representatives in accordance with the procedure set forth in Tenn. Code Ann. § 17-5-311(b)(Supp. 1997). Costs of this appeal shall be paid by Billy Wayne Williams, for which execution shall issue if necessary.

_____
Riley Anderson, Chief Justice

**CONCUR:**

Drowota, Holder, and Barker, JJ.

Birch, J., not participating