# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
# FILED

October 18, 1999

Cecil Crowson, Jr.

Appellate Court Clerk

| | | |
|---|---|---|
| JOHN DAVIS, | ) | |
| and wife CLAUDIA DAVIS, | ) | NO.  03A01-9812-CH-00418 |
| d/b/a/ C & J ENTERPRISES, | ) | |
| | ) | |
| Plaintiffs-Appellants | ) | |
| | ) | Appeal as of Right From The |
| vs. | ) | JOHNSON CO.  CHANCERY COURT |
| | ) | |
| MICHAEL E.  McINERNEY and | ) | HON.  G.  RICHARD JOHNSON |
| KOTZ AND SANGSTER, P.C., | ) | CHANCELLOR |
| | ) | |
| Defendants/Appellees. | ) | |

**For the Appellants:**

Arthur M. Fowler
McKinnon, Fowler, Fox
& Taylor
130 East Market Street
Johnson City, TN 37604-5711

**For the Appellee
Michael E.  McInerney:**

Michael McInerney, Pro Se

**For the Appellee
Kotz & Sangster, P.C.:**

Rick J.  Bearfield
Suite 1, Wesley Plaza
2513 Wesley Street
P.  O.  Box 4210 CRS
Johnson City, TN 37602

REVERSED and REMANDED                                              Swiney, J.

# O P I N I O N

This is an appeal from an Order of the Chancery Court for Johnson County granting Defendants' Motion for Summary Judgment. Appellant raises the issue of whether the Trial Court erred in granting summary judgment. Appellees contend the existence of a contract of guaranty is a question of law for the Court, which the Court properly decided based on undisputed facts, and that the Trial Court properly granted summary judgment. For the reasons herein stated, we reverse the judgment of the Trial Court and remand the case to the Trial Court for further proceedings consistent with this Opinion.

## BACKGROUND

In the Fall of 1989, Appellants [Husband and Wife], doing business as C & J Enterprises, purchased a franchise right to market long distance telephone service in North and South Carolina and Northeast Tennessee from NCN Communications, Inc., a corporation owned by the Gurr Group. They left their home in Florida and moved to Mountain City, Tennessee, to begin the new business. In Spring 1990, the Attorney Generals of North Carolina and South Carolina issued cease and desist orders against NCN which prohibited NCN and Appellants from marketing long distance service in those states.

McInerney (Appellee), an attorney and principal (at that time) in the law firm of Kotz and Sangster (Appellee), contacted Appellants on several occasions to discuss the regulatory problems NCN was having.[1] Appellants say he informed them "that he was representing the Gentry Group, Inc., which was in the process of inserting millions of dollars into the NCN operation and would buy out the Gurr Group." McInerney sent a proposed Amended Contract to Appellants, who initially refused to sign it because of concern about Section 18, which provided that they would release, indemnify and hold NCN, NCN's shareholders (the Gurr Group), and Gentry Group, Inc., free from and against any and all claims arising or accruing prior to December 6, 1990, and from any claims which might thereafter accrue from any circumstance in existence prior to December 6, 1990.

Appellants further allege that McInerney telephoned them on November 29, 1990, and "implored" them to sign the Amended Contract. They contend he made a "personal guarantee to us of $120,000.00 and 90 days," i.e., that the problems would be straightened out with the Attorney Generals and they would be able to resume their franchise business within 90 days or they "would be protected" to the extent of $120,000.00. He faxed them the Amended Contract to sign. On November 30,1990, McInerney wrote a follow-up letter, on Kotz & Sangster, P.C. law firm letterhead, and faxed it to them. On December 6, 1990, McInerney mailed the original of that letter to Appellants, with a cover letter on law firm letterhead. Appellants say that, in reliance upon the November 30, 1990 letter with its December 6, 1990, Kotz & Sangster cover letter, affirming the telephone discussion the night before, they signed the Amended Contract. Because the language in these two documents is crucial to our determination of whether Summary Judgment was proper in this case, we reproduce the documents verbatim:

> Letter on Kotz & Sangster, P.C. letterhead, dated November 30, 1990, signed by Michael E. McInerney:
>
> Dear Mr. and Mrs. Davis:
>
> This letter will confirm our telephone conversation of November 29, 1990, in regard to the Amendment to Marketing Franchise Contract (the "Amendment") which we forwarded to you via facsimile on that date.
>
> In that regard, enclosed are an original and two (2) copies of such Amendment which reflect the revisions we discussed concerning Paragraph 4 of the Amendment and Paragraph 12.B.iii.d. of the Marketing Franchise Contract (relating to waiver of the performance criteria), and Paragraph 5 of the Amendment and Paragraph 2.C.iii. of the Marketing Franchise Contract (relating to payment of audit costs).
>
> In addition, this will confirm that on behalf of NCN Communications, Inc., I have given you my assurance and guaranty that if our acquisition is completed, within ninety (90) days of the date thereof (intended to be December 6, 1990), by March 6, 1991, either North Carolina or South Carolina will both (1) be free of the restrictions preventing NCN Communications, Inc. from transacting business currently affecting both states; and (2) will be covered by a long distant carrier. In the event of a failure to satisfy this assurance, then you will be entitled to pursue your remedies for additional damages resulting from such failure, provided that such damages will be limited to $120,000.

Based upon the foregoing, this will confirm that you will execute the enclosed Amendment to Marketing Franchise Contract and return the same to me as soon as possible, and in any event, by December 6, 1990.

If you have any questions, please do not hesitate to contact us.

Sincerely,

/s/

Michael E. McInerney

Letter on Kotz & Sangster, P.C. letterhead, dated December 6, 1990, signed by Michael E. McInerney:

Dear Mr. and Mrs. Davis:

Pursuant to our telephone conversation of December 5, 1990, enclosed is the original of our firm's letter to you dated November 30, 1990, along with the enclosures mentioned therein, which was returned to us today by Federal Express because it was unclaimed.

As we discussed, please execute the enclosed Amendment to Marketing Franchise Contract and return the same to us for execution by NCN Communications, Inc.

If you have any questions, please do not hesitate to contact us.

Sincerely,

/s/

Michael E. McInerney

Gentry Group's acquisition of NCN was completed on Dec. 6, 1990. Neither North Carolina or South Carolina ever allowed NCN or its franchisees, the Appellants, to conduct business there.

In 1993, NCN filed a petition for reorganization in US Bankruptcy Court in the Eastern District of Michigan. Appellants filed a Proof of Claim, asserting Unsecured Nonpriority Claims against NCN for (1) "$120,000.00, letter attached, debt incurred 11/30/90"; and (2) "$430,000.00, debt incurred 9/25/89 onward." Appellant testified in the bankruptcy case that "our claim was against NCN." On May 18, 1994, Appellants' claim for $120,000.00 in the bankruptcy case was allowed by that

Court, but they were unable to recover damages from the bankrupt NCN. Six months later, on September 12, 1994, Appellants filed this complaint against McInerney and his law firm. On September 8, 1998, the Trial Court granted Appellees' Motion for Summary Judgment.

## DISCUSSION

Summary judgment is rendered in favor of a party upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.03. Since our review of the trial court's grant of summary judgment is purely a question of law, our review is de novo and no presumption of correctness attaches to the trial court's judgment. *Eyring v. Fort Sanders Parkwest Med. Cen.,* 991 S.W.2d 230, 236 (Tenn. 1999). Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn. R. Civ. P. 56 have been met. In doing so, we must consider the pleadings and the evidentiary materials in a light most favorable to the motion's opponent, and we must draw all reasonable inferences in the opponent's favor. *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991).

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56. The purpose of summary judgment is to resolve controlling issues of law. *Byrd v. Hall,* 847 S.W.2d 208, 216 (Tenn. 1993). Summary judgment "is an efficient means to dispose of cases whose outcome depends solely on the resolution of legal issues." *Byrd v. Hall* at 216. However, summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

The Appellants argue that (1) there are disputed issues of material fact which preclude the granting of a summary judgment; (2) that "[s]imply put, an attorney [McInerney] is charged with the duty of good faith and honorable dealing on all occasions, *Schoolfield v. Tennessee Bar Ass'n.,* 353 S.W.2d 401, 404 (Tenn. 1961); and (3) that:

> [f]inally, the November 30, 1990, letter from Defendant McInerney to
> Mr. and Mrs. Davis *is not itself the guaranty,* but only memorialized
> and confirmed a guaranty given the night before. The letter begins 'This

letter will confirm our telephone conversation of November 29, 1990, in regard to the Amendment to Marketing Franchise Contract (the "Amendment") which we forwarded to you via facsimile on that date." *In the telephone conversation,* McInerney agreed to personally guarantee the obligations of NCN up to the amount of $120,000.00 if Appellants would sign the Amended Contract. The Appellants signed the Amendment based on that personal guaranty, and "the record is void of any denial that such a guaranty was made."

Appellants argue that the representations made by McInerney, both individually and for his law firm, are equivalent to those in *Chaffin v. Gullett,* 34 Tenn. 275, an 1854 Tennessee case involving two mail carriers, Chaffin and Gullett, who delivered mail under contract with the US postal services on horses with buggies. Chaffin quit the job and Gullett purchased Chaffin's horse and buggy, for which he agreed to pay Chaffin with funds received on the postal service contract. Third parties then assumed Chaffin's duties, and entered into a guaranty, that Gullett would perform and that Chaffin would be held harmless if Gullett did not perform. Then Gullett quit delivering mail too, and never paid Chaffin for the horse and buggy. Chaffin sued the third parties for the horse and buggy, under the guaranty. The third parties responded that the guaranty did not apply to Gullet's payment to Chaffin for his horses and coaches. The Trial Court held the third parties liable to Chaffin because that interpretation of the guaranty was "eminently fallacious," since Chaffin would not have, "in effect, deprived himself, by contract, of the very money which he was struggling to secure." The Court accepted parol evidence and looked at the surrounding circumstances to interpret the guaranty.

Appellants contend that in the case at bar, as in *Chaffin,* they would not have released NCN had McInerney, individually, and his law firm, not guaranteed their damages for nonperformance by NCN. Appellants argue that in both cases, the guaranty resulted in the defendants becoming sureties for the performance of another and therefore they clearly became liable for damages as a result of the failure of the assurance or guaranty. We think *Chaffin* is readily distinguishable because, in that case, the existence of a guaranty was admitted, and only its scope was at issue. Here, the parties disagree as to the nature of the document.

Appellants also cite *Creative Resource Management, Inc., v. Soskin,* Tenn. Ct. App.

1998 No. 01A01-9808-CH-00016, filed November 25, 1998 at Nashville, *no appl. perm. app*. In that case the Defendant, Barry Soskin, was president of Nashville Pro Hockey, LLC, which owned the Nashville Nighthawks, a minor league professional hockey team, also a Defendant. Nashville Pro Hockey, LLC, contracted with the Plaintiff, Creative Resource Management, Inc., for Plaintiff to provide employee leasing services for the Nighthawks. The contract provided in section XI(f): "In the body of the contract the pronouns 'we' and 'you' refer to 'CRM' and the 'client' respectively.

The contract further provided in paragraph VII(d):

> By affixing my hand and seal to this agreement, I personally guarantee any and all payments payable as represented and outlined in this agreement including but not limited to payrolls, taxes, (state and federal), insurance premiums, and all other fees aforementioned in paragraph VII.

Barry Soskin signed the contract for the "client" Nashville Pro Hockey, LLC. When Nashville Pro Hockey, LLC failed owing CRM $29,626.41, CRM brought suit against Nashville Pro Hockey, LLC and certain of its officers, including Barry Soskin. The Trial Court granted Soskin's motion for summary judgment, thereby holding that his signature on the contract was in a representative capacity only and not in his individual capacity. On appeal, we reversed, finding that from the language of the instrument itself, Barry Soskin was a guarantor and was liable on his guaranty. Appellants contend the Appellees in this case made an equivalent promise. We cannot agree. We are unconvinced that the phrase ". . . .on behalf of NCN Communications, Inc., I have given you my assurance and guaranty," is the equivalent of ". . . I personally guarantee any and all payments . . . ."

Appellee McInerney filed a pro se brief in this case but did not appear at oral argument, personally or through counsel. In his brief, he says that "the existence or non-existence of the guaranty is the gravamen of this lawsuit." However, he argues that the issue is one of law, not fact, citing *Bailey v. Brister,* 353 S.W.2d 564 (Tenn. App. 1961).

In *Bailey v. Brister,* a lawyer, acting as counsel for the plaintiff in a lawsuit, wrote to the Defendant concerning settlement of the case. There ensued a long course of communications by letters between the lawyer and the Defendant which were then introduced as evidence at trial. The Chancellor

submitted to the jury the issue of fact, "Did the parties through their counsel enter into a contract to settle the case of James W. Brister vs. Virgil J. Bailey, et al., cause No. 60141 while said cause was pending in the Court of Appeals?" The jury answered, "Yes." This Court reversed the decree of the lower court and dismissed plaintiff's complaint, finding that

> "the cause did not involve an issue of fact to be decided by the jury, but only an issue of law, which should have been decided by the Chancellor in favor of defendant . . .[c]onstruction of these documents was the function of the chancellor in the lower court, and not of the jury. On appeal, it becomes the function of this court."

It is well settled that the interpretation of a written agreement presents a question of law and not of fact. *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn. App. 1992); *APAC-Tennessee, Inc. v. J.M. Humphries Const. Co.,* 732 S.W.2d 601, 604 (Tenn. App. 1986). Ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact. *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335-36 (Tenn. 1983). If a contract is plain and unambiguous, the meaning thereof is a question of law for the court. *Warren v. Metro,* 955 S.W.2d 618, 623 (Tenn. App. 1997).

McInerney says Appellants have admitted that the November 30, 1990 letter is not a guaranty by McInerney or Kotz and Sangster, and have claimed that the real guaranty was given over the phone. The parol evidence rule prohibits testimony in contradiction of a written, unambiguous guaranty, citing *Union Oil Co. of Calif. v. Service Oil, Inc.,* 766 S.W.2d 224 (6th Cir. 1985). Parol evidence cannot be used to contradict or alter the terms of a written contract that is complete and unambiguous on its face. *See Jones v. Books,* 696 S.W.2d 886 (Tenn. 1985); *Airline Constr., Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn. App. 1990). However, when the writing is not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or such as admits of more than one conclusion, it is not error to submit the doubtful parts under proper instructions to the jury. *Jackson v. Miller,* 776 S.W.2d 115, 118 (Tenn. App. 1989).

Appellee Kotz & Sangster, P.C., argues that if the November 30, 1990 letter is a guaranty, and is *not* the guaranty of NCN, then it is the guaranty of McInerney individually and not that

of Kotz and Sangster, because McInerney lacked actual, apparent or ostensible authority to bind the law firm. Kotz and Sangster did nothing which clothed McInerney with actual or apparent authority to bind the law firm. Plaintiffs make no claim that they have ever communicated with the law firm. Plaintiffs have steadfastly insisted that they were looking to McInerney for his personal guaranty.

A contract is ambiguous "when it is of uncertain meaning and may fairly be understood in more ways than one." *Terry v. Ober Gatlinburg, Inc.,* No. 03A01-9701-CV-00026 filed February 3, 1998 at Knoxville, *perm. app. denied July 13, 1998,* citing *Empress Health and Beauty Spa Inc. v. Turner,* 503 S.W.2d 188, 190-191 (Tenn. 1973). In this case, we think the facts and legal conclusions drawn from the facts, including the documents, reasonably permit more than one conclusion. We think the phrase ". . . on behalf of NCN Communications, Inc., I have given you my assurance and guarantee . . ." is ambiguous, as it could reasonably be interpreted as a guaranty by NCN and/or by McInerney. As the key phrase in the document may be fairly understood in more ways than one, it is of uncertain meaning and ambiguous. This being so, we cannot say that the facts and legal conclusions to be drawn from the facts before us reasonably permit only one conclusion. A review of Appellees' Rule 56.03 listing of undisputed material facts and Appellants' response shows disputes as to material facts. Given the dispute as to material facts and the ambiguity of the documents, summary judgment is not appropriate. Based upon the record before this Court, the facts and legal conclusions to be drawn from those facts do not reasonably permit only one conclusion. It is our opinion that Appellees, based upon the record before us, have not met their burden under Rule 56 of the Tennessee Rules of Civil Procedure.

## CONCLUSION

The judgment of the Trial Court is reversed and this cause is remanded to the Trial Court for further proceedings, consistent with this Opinion. The costs on appeal are assessed against the Appellees.

_____
D. MICHAEL SWINEY, J.

CONCUR:

_____
HOUSTON M. GODDARD, P.J.

_____
HERSCHEL P. FRANKS, J.